# ADDIE BLANCHE MEASLEY

## *vs.*

## GEORGE M. HOUSMAN ET AL.

*Fraud—In Procurement of Contract—Concealment of Facts.*

A child of decedent who had, in consideration of $2,000 paid her by persons named as residuary legatees in a will executed by decedent, and a legacy to her of $500 contained therein, relinquished all claim to any further share in decedent's estate, amounting to $15,000, *held* to be entitled to have the question of fraud in the procurement of the relinquishment passed upon by the jury, such legatees having failed to inform her that from the will, as found after decedent's death, the clause in their favor had been torn out, apparently by testatrix with the purpose of revocation, and that the part thus removed had been, by means of "stickers," reinserted in the paper, which was thereafter presented for probate.                         pp. 350-354

A contract may be set aside as having been procured by misrepresentation, although the misrepresentation was by means of conduct or acts, as distinct from language.                         p. 354

*Decided January 8th, 1924.*

Appeal from the Circuit Court for Baltimore County (DUNCAN, J.).

Issues from the Orphans' Court to determine the validity of an agreement by Addie Blanche Measley relinquishing her share in the estate of her mother, Hester C. Baker, in favor of George M. Housman and others. From a ruling by which the court withdrew from the jury the question of fraud in the procurement of such agreement, said Addie Blanche Measley appeals. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*William H. Lawrence,* with whom was *C. Gus Grason* on the brief, for the appellant.

*Edward H. Burke,* with whom was *H. Courtenay Jenifer* on the brief, for the appellees.

THOMAS, J., delivered the opinion of the Court.

On the 24th of May, 1921, the appellees, George M. Housman, Wilson Housman and G. Orville Bull filed in the Orphans' Court of Baltimore County a petition alleging that, under the will of Hester C. Baker, of Baltimore County, deceased, which was duly admitted to probate by said court on March 22nd, 1921, the appellees were the residuary legatees and devisees, after the payment of the debts and funeral expenses of the testatrix and a legacy of $500 to Addie Blanche Measley; that the petitioners were the nephews of the testatrix, and that, after the inventory of the real and personal property and a list of the debts of the testatrix had been filed in said court by Isaac Shaver, the executor, the petitioners entered into the following agreement and supplemental agreement with the said Addie Blanche Measley:

> "This agreement, made this first day of April, A. D. 1921, by George M. Housman, Wilson Housman and G. Orville Bull, parties of the first part, and Addie Blanche Measley, party of the second part.
>
> "Witness said George M. Housman and Wilson Housman, of the first part, agree to pay Addie Blanche Measley $500 each, and G. Orville Bull, of the first part, agrees to pay Addie Blanche Measley $1,000. The said Addie Blanche Measley, of the second part agreed to accept this, with the amount of legacy named in her mother's will of $500, as her share of all the personal and real property of which her mother possessed at her demise.
>
> "It is also agreed in the event of either party of the first part failing to abide by said agreement, then each party shall forfeit $3,000 to be paid to the party of the

second part, and in the event of the party of the second part fails to abide by said agreement then a forfeiture of $3,000 shall be paid to each of the parties of the first part.

"Witness our hands and seals day and year first written.

> "(Signed)
>
> |  |  |
> |---|---|
> | "George M. Housman, | (Seal) |
> | "Wilson Housman, | (Seal) |
> | "G. Orville Bull, | (Seal) |
> | "Addie Blanche Measley. | (Seal) |

"Witnesses:

"(Signed) Isaac Shaver,

"(Signed) J. M. Routson."

"New Freedom, Pa., April 4, 1921.

"All of the parties to this agreement, George M. Housman, Wilson Housman, G. Orville Bull and Addie Blanche Measley, being present at the office of W. H. Freed, at New Freedom, Pa., have agreed and do hereby agree and consent that the within agreement shall be and is hereby endorsed to the effect that the money affected by this agreement shall be payable immediately upon its receipt from the estate of Hester C. Baker to the within-named beneficiaries and parties hereto, and that the heirs, if any, of the parties hereto shall be bound for the faithful performance of all and every the covenants and agreements in the within and foregoing agreement, same as and in all respects fully and like the parties hereto.

> "Witness our hands and seals, at New Freedom, Pa., this fourth day of April, A. D. 1921.
>
> |  |  |
> |---|---|
> | "George M. Housman, | (Seal) |
> | "Wilson Housman, | (Seal) |
> | "G. Orville Bull, | (Seal) |
> | "Addie Blanche Measley. | (Seal) |

"Witness:

"W. H. Freed,

"Lida Freed."

The petition further alleged that, prior to the execution of said agreement, the said Addie Blanche Measley "expressed dissatisfaction" with the terms of said will, and that said agreements were entered into for the purpose of satisfying and settling all her claims to the estate of her mother, and that she agreed to accept the sum named in the agreement of April 1st, at the time mentioned in the agreement of April 4th, "in full of her share" of the real and personal estate of which her mother died possessed; that the time fixed by said agreements for the payment of the sums therein mentioned is the time of the distribution of said estate, and that the petitioners are ready and willing to pay the same when the estate of the testatrix is distributed; that, notwithstanding said agreements, the said Addie Blanche Measley on the 28th day of April, 1921, filed a caveat to said will of her mother; that said agreements are in full force and effect and operate as a bar to any proceedings by her to set aside her mother's will, and that the penalty provided for in said agreements has been disregarded by her; that on March 30th, 1921, the said Addie Blanche Measley telephoned to George M. Housman, one of the petitioners, and requested an interview with him; that said Housman saw her and talked with her, and later in the same day she visited him at his house; that she said to him that she had received letters from different persons advising her to attack her mother's will, but that she would be perfectly satisfied if she received from the estate $2,000 in addition to the legacy of $500; that in pursuance of these statements the petitioners went with her at her request to the home of Isaac Shaver, the executor named in the will, for the purpose of having the agreement proposed by her reduced to writing; that said agreement of April 1st was accordingly prepared by Isaac Shaver and was signed and sealed by the said Addie Blanche Measley and the petitioners, and said supplemental agreement of April 4th was prepared by Mr. W. H. Freed, of New Freedom, Pennsylvania, and executed by them, and the agreements, at her request, were left with

the said Freed for safekeeping; that at the time of the execution of said agreements the said Addie Blanche Measley promised and agreed not to file a caveat to said will; that she knew at the time of the execution of said agreements that the gross value of her mother's estate was approximately $15,000; that by said agreements she released all of her interest in her mother's estate, and particularly her right to institute and maintain a caveat to said will. The prayer of the petition was that said caveat be dismissed by the orphans' court, and that court passed an order requiring the said Addie Blanche Measley to show cause why the prayer of the petition should not be granted.

On the 8th of June, 1921, Mrs. Measley filed an answer to said petition, in which she alleged that her mother did make a will which was duly executed by her, and that before leaving the cemetery, on the day of her mother's funeral, Isaac Shaver announced that the will would be read at her mother's house; that she went from the cemetery to her mother's house, and that then and there the said Isaac Shaver read what purported to be her mother's last will and testament; that thereafter she expressed dissatisfaction with the terms of said will to George M. Housman, and (not knowing the true state of facts in regard to the destruction of said will by her mother) "offered to compromise and to take an equal share with the said George M. Housman, Wilson Housman and G. Orville Bull"; that she was told that that could never be, and was persuaded by the said petitioners, "through their fraud and deceit" to enter into said agreement, "they * * * well knowing at the time * * * that the said alleged will of the decedent had been destroyed by her in her lifetime and that the said Hester C. Baker did in point of fact die intestate"; that she, the said Addie Blanche Measley, "had no knowledge whatsoever of the destruction of said will, which was well known to the said George M. Housman, Wilson Housman and G. Orville Bull, and not knowing of the destruction of said will, * * * she signed the agreement men-

tioned in the petition"; that said agreement and her signature
thereto were procured by the fraud and deceit of said peti-
tioners, and that she signed said agreement because she
thought her mother had died testate and that said will was
valid, "when in point of fact said will was invalid and her
mother died intestate."

The petitioners filed a general replication to the answer of
Addie Blanche Measley, and thereafter, upon the application
of the petitioners, the orphans' court sent to the Circuit Court
for Baltimore County for trial the following issue: "Was
the agreement" of April 1st, 1921, and "the supplemental
agreement" of April 4th, 1921, "or either of them, * * *
procured by fraud or deceit exercised and practiced upon the
said Addie Blanche Measley by the said George M. Hous-
man, Wilson Housman and G. Orville Bull, or by any one of
them?"

At the trial of the case in the circuit court, the appellees
(defendants below) produced William H. Freed, who testi-
fied that he was the cashier of the First National Bank of
New Freedom, Pennsylvania, where he resides, that he knew
the parties to the suit, that he had the agreement in question,
which he produced, and that the parties interested therein
gave it to him for safe keeping in his office on April 4th,
1921, at which place and time the supplemental agreement
on the back of the original agreement was made.  On cross-
examination he stated that the supplemental agreement was
drawn up and signed in his office at his house on April 4th,
1921; that no one of the parties thereto "dominated the con-
versation, but all took part in the discussion"; that he "type-
wrote" the supplemental agreement on the back of the orig-
inal agreement, and "had kept it at his bank practically ever
since."  The defendants also produced Isaac Shaver, who
testified that he lived at Freeland, Maryland, and was named
as executor in Mrs. Baker's will; that the paper handed to
him in court was an agreement made by the plaintiff and
the defendants, all of whom signed it in his presence on

April 1st, 1921, and that his signature appears thereon as a witness.

The plaintiff, Mrs. Measley, then produced Mrs. Adella Foust, who testified that she lived at Eckloe, near Freeland, Maryland, and had known Mrs. Baker and her daughter, Mrs. Measley, for five years; that Mrs. Measley and her husband lived on the farm of Mrs. Baker; that about 2 o'clock in the afternoon of the day on which Mrs. Baker died she went to Mrs. Baker's house, and that Mrs. Bull, the mother of G. Orville Bull, Mrs. George M. Housman and Mrs. Measley were there. Mrs. Gore testified that she knew Mrs. Baker and Mrs. Measley; that after Mr. Baker's death Mrs. Measley's husband farmed the place for Mrs. Baker. Mrs. Wilson testified that she knew Mrs. Baker and her daughter, Mrs. Measley, and that after Mr. Baker's death Mrs. Measley and her husband moved to Mrs. Baker's to live.

Isaac Shaver, who was called as a witness by the plaintiff, testified that he lived at Freeland, that he was a retired school teacher, and had taught both Mrs. Baker and her daughter, Mrs. Measley; that about 2.30 in the afternoon of the day Mrs. Baker died (March 16th, 1921), while he was out on his son's farm, he was visited by Mr. George M. Housman and Mr. Benjamin Bull, father of G. Orville Bull, who brought him a paper shoe box which they said contained the "valuables" of Mrs. Baker, and then left him; that he went to the house and examined the contents of the box, which consisted of several certificates of deposits in banks, a will, a gold watch, three rings, a mortgage for $1,400, a note for $500 in favor of Mrs. Baker, and probably some tax bills; that he found the envelope, "in which the will was sealed when she signed it, open"; that when he examined the contents of the envelope he found that a part of the will was missing; that the part that was torn out and missing was the part which reads "I give, bequeath and devise to my nephews, George M. Houseman, Wilson Houseman and G. Orville Bull, all the rest and residue of my property, real, personal

or mixed, wheresoever situated, which I now own or may hereafter acquire and of which I shall die seized or possessed, share and share alike"; that the part of the will that was torn out was not in the envelope, it was detached and was not brought to him; that after an early supper at his son's home he drove over to Mrs. Baker's house, and that when he got there he met George M. Housman "in the driveway outside" and told him of the condition of the will and showed it to him; that as Benny Bull was with George Housman when the envelope was delivered to him they telephoned to him and waited for him to arrive before beginning to search for the missing part of the will; that when Benny Bull arrived they went upstairs and opened an old desk belonging to Mrs. Baker which contained a number of papers, and found the missing part of the will among them; that they matched it and found it to be the part that had been torn out of the will, and that he put it in the envelope which contained the balance of the will and took it home with him; that after he got home he procured some "transparent stickers" from his son's store, fitted the missing part of the will into the will and put the stickers on; that on Saturday after the funeral he went back to Mrs. Baker's house and read the will and then placed it in the envelope from which he had taken it, and put the envelope in his pocket; that after he read the will, "I made the remark of the condition of the will to the folks in the room; that that was the condition in which I received it," and that Mrs. Measley, G. Orville Bull, George M. Housman and Wilson Housman were in the room. He also testified that he did not remember telling Mrs. Measley, or any one else in her presence, that a part of the will had been torn out and was missing; that on April 1st, 1921, at the request of the plaintiff and the defendants, who called on him at his home, he drew up the contract of that date; that after they had reached an agreement and the contract was drawn up, he took Mrs. Measley in a private room and asked her if she knew what she was doing and if she was satisfied,

and that she said she understood the contract and was satisfied, and that they then signed the contract in his presence and the presence of the other witness; that he did not remember telling Mrs. Measley on that occasion that a part of the will had been torn out; and that he "qualified" as the executor named in the will.   On cross-examination he testified that when Mr. George M. Housman and Mr. Benny Bull brought him the shoe box containing the papers and valuables of Mrs. Baker they told him that they had found them in a desk upstairs in Mrs. Baker's house, and that they ascertained that he was the executor from a letter from him to Mrs. Baker; that he recognized the envelope in the box as the one in which he had placed the will, and then sealed and delivered it to Mrs. Baker; that on the outside of the envelope was written, "Last will and testament of Hester C. Baker": that when he took the envelope out of the shoe box one end of it had been torn open; that when they subsequently found the missing part of the will, "he matched it" and found that it was a part of the will as it had been written by him in his handwriting; that when he read the will to the family after the funeral Mrs. Measley was in the room, and that after he read it he held it up "and said this is in the condition this instrument of writing came into my hands"; that Mrs. Measley did not say anything to him in the room, but that afterwards when they got outside she said to him, "I didn't expect anything from mother," and that he replied, "I enticed her to leave that much."   Mrs. Measley testified that nothing was said to her by any one about her mother's will from the time of her mother's death to the time the will was read after the funeral by Isaac Shaver; that she was present when the will was read, and was sitting on the steps about five feet from Mr. Shaver; that she heard it read but did not see it; that Mr. Shaver said nothing about the will having been torn; that on March 31st she had Mr. George M. Housman telephoned to, and that he and his wife came to see her that afternoon; that he asked her what she wanted with him, and

that she told him that she was "going to fight the will"; that
he replied, "You can't fight that will, that will is perfectly
all right; your mother was all right when she made the will
and it is all right; you can't break it." When asked "What
else was said in that interview," she replied, "He said, you
can't break the will; there can't be nothing done now; get
ready and go along with me to Will Housman's, in New
Freedom, and we will see what we can do for you up there";
that she and George M. Housman and his wife went to Will
Housman's, and that as they were leaving that evening Wil-
son Housman said to her, "Well, Addie, George says you are
going to fight the will," and that when she said "yes" he said,
"You can't do that, * ** we will meet tomorrow evening at
Mr. Shaver's and make agreement what we will give you";
that she met George M. Housman, Benny Bull and his wife,
Wilson Housman and his wife and G. Orville Bull at Mr.
Shaver's the next day, when George Housman told her that
they had decided that he and Wilson Housman would each
give her $500, and that G. Orville Bull would give her
$1,000; that she signed the agreement of April 1st that day
because "they told her" that she could not fight the will and
could not get any money any other way, and she thought to
get the $2,000 would help "some"; that she believed George
M. Housman when he told her that she could not break the
will, and that she did not know at that time that the will had
been torn, and never knew it until April 20th; that nothing
was said about the will while they were at Mr. Freed's; that
the first time that she heard that the will had been torn was
on April 20th, when she was told by Mr. J. P. Jordan, in
whose house she was employed as a nurse and housemaid at
the time of her mother's death, and that she went to Towson
to see the will some time in May; that she would not have
signed the agreements mentioned if she had known that the
will had been torn, and that she signed them to get the $2,000
because of Mr. George Housman's statement to her.

The will referred to is as follows:

"I, Hester Catherine Baker of Middletown, Baltimore County, State of Maryland, being of sound and disposing mind, memory and judgment, do make public and declare this to be my last will and testament, hereby revoking all former wills by me at any time made.

"1st. I direct my executor hereinafter named to pay my just debts and funeral expenses.

"2nd. I give and bequeath to my daughter Addie Blanche Measley five hundred dollars, as I, during my natural life provided for her to the extent of her faithfulness.

"3rd. I give, bequeath and devise to my nephews, George M. Houseman, Wilson Houseman and G. Orville Bull, all the rest and residue of my property, real, personal or mixed, wheresoever situated, which I now own, or may hereafter acquire and of which I shall die seized or possessed share and share alike.

"4th. I direct, authorize and empower my executor to sell my real estate (if in possession of any at my demise) and give deed for the same as though I were living.

"I name, constitute and appoint Isaac Shaver, executor of this my last will and testament and I request that my executor give bond for the performance of his duty as such.

"Witness my hand this thirty-first day of March, A. D. 1919.

"Hester C. Baker.

"Signed, published and declared by the above-named testatrix, Hester Chaterine Baker, as and for her last will and testament in the presence of the undersigned who, in her presence, and at her request in the presence of each other have signed our names as subscribing witnesses hereto.

"(Signed)   Frank Wilson,
"Samuel S. Miller."

At the conclusion of the testimony to which we have referred, the court below granted a prayer directing a verdict for the defendants, and the only question presented by the record arises on the plaintiff's exception to that ruling.

The theory upon which the prayer was granted, and the contention of the appellees, is that there was no evidence in the case legally sufficient to show that the agreements in question were procured by fraud or deceit practiced upon the plaintiff by the defendants, or any one of them, the argument of learned counsel for the appellees being, as stated in their brief, that the plaintiff's case "fails not in one but all of the essentials of the action of fraud and deceit. * * * 1. She has failed to show that she has been injured. 2. She has failed to show any misstatement of facts. 3. She has failed to show that she relied on any false statement of facts as distinguished from a mere statement of opinion."

In regard to the first of the "essentials" mentioned, even if we were to assume that the requirement of proof of damages in actions of fraud and deceit is applicable where the fraud is relied on as a defense to the enforcement of such a contract, it would seem unnecessary to discuss the question of proof of damages in this case, where the record shows that the alleged fradulent contract (by which the plaintiff agreed to accept $2,000 and a legacy of $500) is set up as a complete bar to plaintiff's right to caveat an alleged will of her mother, by which the defendants, her nephews, after the payment of a legacy of $500, are given the entire residue of an estate valued by them at $15,000.

In considering the other "essentials" referred to by counsel, it is important to bear in mind that the only question here is whether there is any evidence in the case which should have been submitted to the jury upon the issue of fraud.

Section 324 of article 93 of the Code provides how a will, or any clause thereof, may be revoked by a testator by "burning, cancelling, tearing or obliterating the same," and this Court has adopted the rule stated in 1 *Redfield on Wills* (3rd

ed.), star paging 307, sec. 8: "The rule of evidence in the ecclesiastical courts, in regard to presumptive revocations, from the absence or mutilation of the will, seems to be, that if the will is traced into the testator's possession and custody, and is there found mutilated, in any of the modes pointed out in the statute for revocation, or is not found at all, it will be presumed that the testator destroyed, or mutilated it, *animo revocandi*." *Eschbach* v. *Collins*, 61 Md. 478; *Home for Aged* v. *Bantz*, 106 Md. 147; *Home for Aged* v. *Bantz*, 107 Md. 543; *Safe Dep. & Trust Co.* v. *Thom*, 117 Md. 154. As we have shown, the evidence in the record is to the effect that, after the will was executed by Mrs. Baker, it was put in an envelope, which was sealed and endorsed by Mr. Shaver, who prepared it, and then delivered to the testatrix; that after Mrs. Baker's death George M. Housman and Benny Bull, the father of G. Orville Bull, delivered to Mr. Shaver a shoe box containing the "papers and valuables" of Mrs. Baker, which they had found in her desk "up stairs" in her house; that when Mr. Shaver opened the box he found among other papers and valuables the envelope in which the will had been placed torn open at one end; that he found in the envelope only parts of the will that had been prepared by him and executed by Mrs. Baker, and that the clause by which the residue of the estate was devised and bequeathed to the defendants (being the third clause of the will) was completely torn out, and was not in the envelope; that Mr. Shaver then drove to Mrs. Baker's home, where he met George M. Housman and told him of the condition of the will, "and showed it to him"; that after waiting for the arrival of Benny Bull, Mr. Shaver, George M. Housman and Benny Bull went up stairs to hunt for the missing part of the will, and that while they were examining the contents of an old desk belonging to Mrs. Baker, George M. Housman found the detached clause of the will among what Mr. Shaver describes as "a lot of * * * old rubbish" or "junk"; that George M. Housman gave it to Mr. Shaver, who took it home and, after procuring some "transparent stickers," fitted it in the will and "put the

stickers on it"; that on Saturday after Mrs. Baker's funeral
Mr. Shaver read the will, in the condition to which it had
been restored, at Mrs. Baker's house to those present, includ-
ing the plaintiff and the defendants, and that after reading it
he said that that was the condition in which he had received
it, or the condition in which it had come into his hands; that
he then put the will back in the envelope, and on the following
Tuesday, March 22nd, 1921, presented it to the Orphans'
Court of Baltimore County and the entire will was admitted
to probate. There can be no question that this evidence was
sufficient to justify the presumption that the testatrix tore
the clause mentioned out of the will *animo revocandi,* and,
so far as the plaintiff's right to caveat the will admitted to
probate is concerned, it can make no difference whether Mrs.
Baker intended thereby to revoke the entire will or simply
the third clause thereof. *Home for Aged* v. *Bantz,* 106 Md.
147; *Home for Aged* v. *Bantz,* 107 Md. 543. The suggestion
of the appellees that the presumption of revocation is over-
come by the probate of the will, which cannot be attacked
collaterally, and the case of *Tilghman* v. *France,* 99 Md. 611,
have no application here. This case is not an attempt by the
plaintiff to impeach the probate of the will, but an effort on
the part of the defendants to set up an alleged fraudulent
contract as a bar to plaintiff's right to make a direct attack
upon the will.

The evidence also tends to show that when George M.
Housman went to see the plaintiff at her request, she told him
that she "was going to fight the will" and that he replied,
"You can't fight that will, that will is perfectly all right,
your mother was all right when she made the will and it is all
right, you can't break it," that he also told her that he could
not do anything then, but that she should go with him to see
Wilson Housman, that Wilson Housman, after she told him
that she was going to fight the will, said to her, "You can't
do that. We will meet tomorrow evening at Mr. Shaver's and
make agreement what we will give you"; that, relying upon
these statements of the defendants, the plaintiff met them at

Mr. Shaver's the following day, April 1st, and executed the agreement of that date; that the plaintiff never heard or knew anything about the condition in which the will was found until the 20th of April; that at the time she executed the contract in question she believed what George M. Housman said to her, and thought that was the only way she could get any money, and that if she had known of the condition in which the will was found after her mother's death she would not have signed the agreements.

It is urged by counsel for the appellees that no confidential relation existed between the plaintiff and the defendants, and that they were not bound to make any disclosure to her. But even if we assume that the defendants were under no obligation to disclose to the plaintiff the condition in which the will was found, it by no means follows that the case is devoid of any evidence of fraud in the procurement of the contracts. In the case of *Brager* v. *Friedenwald,* 128 Md. 327, this Court said: "Where one is under no legal obligation to speak, his mere silence or his mere non-disclosure of material facts will not be sufficient, but if in addition to non-disclosure he makes 'some active mis-statements of fact, or, at all events, such a partial and fragmentary statement of fact,' as entirely misleads one to his injury the legal situation is entirely changed," and Judge Burke, speaking for the court, quoted with approval the statement of Chief Justice Marshall in *Laidlaw* v. *Organ,* 2 Wheaton, 195, who, after saying, "The court is of opinion that he was not bound to communicate," then said: "It would be difficult to circumscribe the contrary doctrine within proper limits *where the means* of intelligence are equally accessible to both parties. But, at the same time, each party must take care not to say or do anything tending to impose upon the other. The court thinks the absolute instruction of the judge was erroneous, and that the question *whether any imposition was practiced by the vendee upon the vendor ought to have been submitted to the jury.*"

Counsel for the appellees also insist that the statement of George M. Housman to the plaintiff, "You can't fight that will, that will is perfectly all right, your mother was all right when she made the will and it is all right, you can't break it," was a mere expression of his opinion as to the outcome of an attempt on her part to break the will, and not a mis-statement of fact. Without expressing our approval of that construction of the language quoted, it is sufficient to say that the fraud complained of does not rest upon that statement alone, for in addition to that statement there is evidence tending to show a concealment of the true condition in which the will was found by inserting in it a clause that had been torn out and was not found in the envelope containing the rest of the will. All who participated in the concealment are liable for the result. 12 *R. C. L.,* sec. 147, p. 399; *Kerr on Fraud and Mistake* (4th ed.), 442. It is said in 2 *Pomeroy's Equity* (4th ed.), section 877: "In a majority of instances it (the misrepresentation) is made by means of language written or spoken; but it may consist of conduct alone, or external acts, when, through this instrumentality, it is intended to convey the impression, or to produce the conviction, that some fact exists, and such result is a natural consequence of the acts." The same principle is stated in *Kerr on Fraud and Mistake* (4th ed.), 63, and 12 *R. C. L.,* sec. 13, pp. 243, 244. It cannot be said as a matter of law that this evidence satisfies the requirement stated in *Brager* v. *Friedenwald, supra,* and *Laidlaw* v. *Organ, supra,* that even where one is under no obligation to disclose the real facts, "each party must take care not to say or do anything tending to impose upon the other," and we think the court below erred in withdrawing the case from the jury.

*Ruling reversed and new trial awarded.*