GILBERT ET AL. *v.* GAYBRICK ET AL.

[No. 157, October Term, 1949.]

*Decided May 10, 1950.*

300

The cause was argued before COLLINS, GRASON, HEN-
DERSON, and MARKELL, JJ.

*Hyman Ginsberg* and *Harry Leeward Katz*, with
whom were *Ginsberg & Ginsberg* on the brief, for the
appellants.

*George F. Flentje, Jr.,* with whom was *Webster S.
Blades* on the brief, for the appellees.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from the rulings of the Superior Court
of Baltimore City directing verdicts for the appellees
on seven issues from the Orphans' Court in a caveat
case. These issues were in the usual form and raised
questions as to execution of the will of Elsa Charlotte
Imhof, her knowledge of its contents, undue influence,
mental capacity, fraud, revocation, and whether the
paper writing produced was her will.

Charles Henry Imhof, the testatrix's husband, was
a plumber by trade, residing at 321 South Bentalou
Street for the past 40 years. He and his wife were
both over seventy, he suffering from arthritis, she from
hemorrhoids. Their three daughters were all married,
and their son had been married and divorced. They
owned their home on Bentalou Street, a house and lot
at 2648 St. Benedict Street, a house and lot at 116 Willard
Street, three lots at Suegrove, Baltimore County, im-
proved by a two-story dwelling, various household furni-

ture and equipment, and tools of his trade. All of this property was held as tenants by the entireties. On November 13, 1947, they each executed wills leaving all their property to the other, if surviving, but if not, then to their children in accordance with an identical plan.

It was shown that Mr. Imhof went to see Mr. Klier, an attorney whom he had known many years before, to have the wills prepared. After outlining his desires, he paid a second visit to leave the title papers. Mr. Klier then called at their home on Bentalou Street and discussed the whole matter with Mrs. Imhof. On a second visit both wills were read and executed and witnessed by Mr. Klier and a neighbor, Mrs. Zuebert, who had known the testators for many years. The wills were left with the testators, but Mr. Klier kept unexecuted copies.

Mr. Imhof died on January 28, 1948. His will was never produced or probated, but his interest in the property held by the entireties passed to his wife. Mrs. Imhof died on February 20, 1948. The eldest daughter, Elsa Gilbert, applied for and received letters of administration of her mother's estate. Another daughter, Lillian Fethe, learning of the grant of letters, asked that they be revoked and offered for probate a copy of her mother's will obtained from Mr. Klier. Mrs. Gilbert and her brother John filed notice of caveat. The matter came on for hearing before the Orphans' Court, which by order dated June 16, 1948, revoked the letters granted, granted letters to Mrs. Fethe as administratrix *pendente lite,* and passed an order stating that the carbon copy of the alleged will was a true copy. The court also, parenthetically, recited "(it appearing that said original copy has been lost, mislaid or destroyed other than by the testatrix)." It was conceded at the argument that evidence to support the finding was produced by the caveatees before the Orphans' Court. In spite of this recital the court granted an issue as to revocation for trial in a court of law.

The provisions of the will, as shown by the copy, leave the home property on Bentalou Street to the three daughters, as joint tenants. Mrs. Gaybrick is left the property on St. Benedict Street and Mrs. Fethe, the property on Willard Street, each for life, and then to their respective children; if no children survive, then to become a part of the residue. These same daughters receive the property at Suegrove as tenants in common, for life. The son John, a plumber by trade, is left the plumbing tools and equipment, the household furniture and effects, and $200 in cash. The residue is divided equally among the four children. Mrs. Fethe was named executrix.

It was shown that Mrs. Gaybrick had spent considerable money on the house on St. Benedict Street, and Mrs. Fethe on the house on Willard Street. While there was evidence that the parents were fond of all their children, it was shown that Mrs. Gilbert for some years after her marriage had been incapacitated by a nervous breakdown, but had recovered. During this period her husband had been unable to support her. The son had returned from the war suffering from shock and was somewhat addicted to drink. Whether the scheme of the will was fair to the children is beside the point; the mere fact of disparity is not sufficient to impeach it. Cf. Grant v. Curtin, 194 Md. 363, 383, 71 A. 2d 304, 313, and cases cited.

The testimony as to the execution of the wills is not disputed. There is no evidence of undue influence or fraud. Cf. Koppal v. Soules, 189 Md. 346, 56 A. 2d 48, 50. The appellants stress the fact that Mrs. Fethe, the day before her mother died, deposited $1,000, the proceeds of an insurance policy on the life of Mr. Imhof, in a joint bank account in the names of her mother and herself. She stated that this was only for convenience; it was not intended that she should have this money on her mother's death. She knew about the will and that she had been named executrix, but there was no evidence of importunity on her part. She knew

she was to get the house on Willard Street; she thought Elsa was to get the Bentalou Street house. There was no evidence (except the evidence hereafter mentioned) to rebut the testimony of the draftsman that the testatrix knew and understood the contents of the wills. *Cf. Riggs v. Safe Deposit & Trust Co.*, 186 Md. 54, 46 A. 2d 97; *Grant v. Curtin, supra.* The appellants rely chiefly upon the ground of mental incapacity. The only testimony to support this contention is that of Dr. Norton, the attending physician.

There was testimony that until six months before her death Mrs. Imhof had another physician, who was not produced. Dr. Norton was called to see her for a rectal condition that gave her pain. He was a surgeon. He prescribed an ointment for local application, and a mild sedative, phenobarbital. The latter was to be taken a teaspoonful after meals, enough to have a soothing effect without making her drowsy. He could not say whether she took it or not. There was testimony that she said it did her no good and did not continue taking it, although the prescription of the ointment was renewed. He saw her about six times, and talked to her on the phone. He could not fix the dates of his visits. He testified that she was slow of speech and lethargic, and that she was incapable of executing a valid will or contract. He could not say there was anything wrong with her mentally, "not mentally insane or anything like that * * *. I attributed her disability to the lethargy and due to arterio-sclerosis which you find in a lot of old people." He did not know whether she did the housework and marketing, as testified by Mrs. Zuebert. He testified she died from a valvular heart condition.

We think the trial court was correct in ruling this evidence to be legally insufficient. As was said in *Crockett v. Davis*, 81 Md. 134, 149, 31 A. 710, 712, "* * * if the medical expert gives the reasons upon which his opinion is founded, and they are such as men of ordinary knowledge can weigh, and are, in the judg-

ment of the court, such * * * [that] no rational inference can be deduced therefrom that the testator was wanting in the required mental capacity, his opinion does not afford evidence legally sufficient to show such want of capacity." See also *Donnelly v. Donnelly,* 156 Md. 81, 84, 143 A. 648, and *Smith v. Biggs,* 171 Md. 528, 535, 189 A. 256. In *Cronin v. Kimble,* 156 Md. 489, 496, 144 A. 698, 701, it was said: "Advancing years and bodily infirmities alone do not render one unfit to make a will. As was said in *Birchett v. Smith,* 150 Md. 369, 376, 133 A. 117, 119, quoting a prayer approved in *Higgins v. Carlton,* 28 Md. 115, 144, (92 Am. Dec. 666) : 'The law looks only to the competency of the understanding, and neither age nor sickness, nor extreme distress, nor debility of body, will affect the capacity to make a will if sufficient intelligence remain.' *Berry Will Case,* 93 Md. 560, 584, 49 A. 401, 410." *Cf Grant v. Curtin, supra.* The case of *Love v. Love,* 158 Md. 481, 148 A. 814, relied upon by the appellants, is distinguishable on its facts. The testatrix in that case was 96, and the medical opinion was based upon definite objective findings of senile decay. In regard to the appellants' contention that a hypothetical question put to Dr. Norton was improperly allowed, it is sufficient to observe that the question was never answered.

. We think, however, that the court erred in granting a peremptory instruction on the issue of revocation. In discussing this issue the court said: "The 'question of the existence of the will at the time of the testatrix's death was first presented in the Orphans' Court and in order for the Orphans' Court to admit to probate a copy of the will it was necessary for that court to decide that the will was in existence and had not been revoked at the time that the copy was probated, and the Orphans' Court did consider that question and the Orphans' Court found from the evidence presented before it that the will had been lost or misplaced by some person other than the testatrix and had not been revoked by her. In this case before the court and jury,

caveators presented no additional evidence on that subject * * *."

The record shows that the Court was mistaken in stating or intimating that the Orphans' Court admitted the copy of the will to probate. The filing of the notice of caveat operated as a stay of proceedings in the Orphans' Court. "The filing of a caveat at any stage before an order has been signed admitting the will to probate arrests all further proceedings until the caveat has been disposed of. If this were not so, the very questions put in issue by the caveat would be prejudged by the orphans' court *ex parte.*" *Keene v. Corse,* 80 Md. 20, 23, 30 A. 569, 570. See also §§ 361, 363, Article 93 of the Code. The Orphans' Court did not admit the the paper to probate. On the contrary, it revoked the letters of administration granted and granted letters *pendente lite. Burgess v. Boswell,* 139 Md. 667, 679, 116 A. 457. It granted an issue as to revocation, and its parenthetical finding on that subject could not be controlling, if indeed such finding was admissible for any purpose. *Mason v. Poulson,* 40 Md. 355, 363. The order of June 16, 1948 was not offered in evidence and its inclusion in the transcript is objected to on this ground. However, it appears that the order was read to the jury without objection, although counsel for the caveators remarked: "I think the jury ought to be told this is merely a paper from the Orphans' Court and that the issue in the case is still up here," to which the court replied "Yes, certainly". Nevertheless, in ruling on the prayers the court relied upon the finding of the Orphans' Court as establishing that the will was not revoked, in the absence of evidence to the contrary.

Section 337, Article 93 of the Code provides that a will may be revoked "by burning, cancelling, tearing or obliterating the same, by the testator himself or in his presence, and by his direction and consent." Referring to this clause, it was said in *Measley v. Houseman,* 144 Md. 339, 350, 124 A. 906, 910, "this court has adopted the rule stated in 1 *Redfield on Wills* (3d Ed.), star

paging 307, § 8: 'The rule of evidence in the ecclesiastical courts, in regard to presumptive revocations, from the absence or mutilation of the will, seems to be, that if the will is traced into the testator's possession and custody, and is there found mutilated, in any of the modes pointed out in the statute for revocation, or is not found at all, it will be presumed that the testator destroyed, or mutilated it, *animo revocandi*.' · *Eschbach v. Collins*, 61 Md. 478, 48 Am. Rep. 123; *Home for Aged of Methodist Episcopal Church v. Bantz*, 106 Md. 147, 66 A. 701; *Home for Aged of the M. E. Church v. Bantz*, 107 Md. 543, 69 A. 376; *Safe Deposit & Trust Co. of Baltimore v. Thom*, 117 Md. 154, 83 A. 45." In *Re Hull's Estate*, 164 Md. 39, 49, 163 A. 819, 823, it was said: "The absence of the will raises the presumption that the testamentary paper has been destroyed by the testator *animo revocandi* * * *." See also 1 *Jarman, Wills* (7th Ed.), p. 139; 1 *Underhill, Wills* § 232; 1 *Schouler, Wills* (6th Ed.), § 660; 2 *Page, Wills* (Lifetime Ed.) §§ 873, 876; 1 *Wigmore, Evidence* (3d Ed.), § 2523(b); and cases collected in a note 3 A. L. R. 2d 949.

Wigmore and some of the other text-writers insist that the presumption is not a rule of law but merely an inference of fact. In either event, it is generally agreed that the presumption is rebuttable. This seems to be the rule in Maryland. *Preston v. Preston*, 149 Md. 498, 520, 132 A. 55. In the instant case the unexecuted copy of the will was offered in evidence and it was shown by testimony that the original was duly executed and left in the custody of the testatrix and her husband. This was enough to make out a *prima facie* case and place upon the caveatees the burden of accounting for the nonproduction of the original. But at the conclusion of the caveators' case, the court granted prayers for directed verdicts on all issues, relying upon the parenthetical finding of the Orphans' Court on the very issue of revocation which that court had submitted for determination by the court of law. While the order containing that finding was put in evidence without objection, there

was an objection to its probative effect, which we think was well taken. Accordingly, we shall remand the case for a new trial upon that issue.

It would be inappropriate at this stage of the case to discuss the questions as to the legal effect of the presumption, what evidence might be sufficient to rebut it, and under what, if any, circumstances the court might properly direct a verdict for or against the caveators. Possible analogies may be drawn, however, to the presumption of negligence. *Cf. Potts v. Armour & Co.*, 183 Md. 483, 39 A. 2d 552; *Hochschild, Kohn & Co. v. Canoles*, 193 Md. 276, 66 A. 2d 780; note 10 Maryland Law Review 337.

It appears from the testimony that the will in question was mutual or reciprocal, but there is nothing to suggest that it was executed pursuant to a contract. Whether such a will could be revoked is a question upon which there seems to be no authority in Maryland, but many cases are collected in a note, 169 A. L. R. 9. As the point was not raised below, we express no opinion on it here.

*Rulings affirmed in part, reversed in part and case remanded for a new trial.*