GESSLER ET AL. *v.* STEVENS, EXECUTOR

[No. 17, October Term, 1954.]

*Decided November 18, 1954.*

The cause was argued before BRUNE, C. J., and DELA-
PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*O. Bowie Duckett,* with whom was *Z. Townsend Parks,
Jr.,* on the brief, for the appellants.

*W. Leslie Prout* and *Marvin I. Anderson* for the ap-
pellee.

DELAPLAINE, J., delivered the opinion of the Court.

This appeal comes here from an order of the Orphans'
Court of Anne Arundel County refusing to revoke letters
testamentary granted to William W. Stevens on the es-
tate of Henry L. Langrehr, who died on September 13,
1952.

On September 15, 1952, Mary A. Gessler, of Baltimore,
through Z. Townsend Parks, Jr., her attorney, sent to
the Register of Wills of Anne Arundel County a notice
of her intention to *caveat* any paper purporting to be the
will of Langrehr. Mrs. Gessler, one of Langrehr's nieces,
claimed that he was of unsound mind and had been under
the domination and control of Stevens, in whose home
he had been living. On October 16 she applied to the
Orphans' Court for letters of administration, and the
Court granted letters to her on October 21.

On October 24, 1952, Stevens presented to the Register
of Wills an instrument purporting to be the will of
Langrehr, and applied for letters testamentary on his
estate. The will was executed on November 3, 1949.
After making bequests to a Lutheran Church and a
Lutheran Home and to Henry R. Langrehr Philips, Jake
Langrehr, George Langrehr, and Myrtle Langrehr, the
will left all the residue of the estate to Stevens and ap-
pointed him executor.

Stevens, in his application for letters testamentary,
swore that the addresses of Langrehr's heirs were "not
known." On November 5, 1952, the Court, without giving
any notice to Mr. Parks, or to Mrs. Gessler, the adminis-
tratrix, or to any other relatives of the deceased, admitted

the will to probate and granted letters testamentary to Stevens.

On December 15, 1953, Mrs. Gessler, Margaret Vogel and Susan Busch, nieces of the deceased, and George Langrehr, nephew, filed a petition in the Orphans' Court alleging that the will was admitted to probate unlawfully and as a result of deception and fraud, and praying the Court (1) to revoke the letters testamentary, (2) to appoint an administrator *pendente lite,* and (3) to grant such other and further relief as the case may require.

The petition of the four next of kin states their case substantially as follows: On September 15, 1952, Mrs. Gessler, through Mr. Parks, her attorney, sent to the Register of Wills of Anne Arundel County a notice of her intention to *caveat* any paper purporting to be Langrehr's will. On October 16 the Orphans' Court granted her letters of administration, and she qualified as administratrix. On October 17 Mr. Parks wrote a letter to Stevens advising that Mrs. Gessler had been appointed administratrix, and urging a conference to discuss the settlement of the estate. W. Leslie Prout, attorney, of Baltimore, replying for Stevens, asked Mr. Parks what information he wanted. On October 29 the two attorneys conferred. Mr. Parks informed Mr. Prout that he had sent a notice to the Register of Wills that Mrs. Gessler intended to *caveat* any will made by Langrehr, and asked Mr. Prout to advise him of any further developments. On October 30 Mr. Prout wrote Mr. Parks that Stevens would apply to the Orphans' Court on November 11 for letters of administration *pendente lite.* Mr. Parks replied that he would object to the grant of letters to Stevens. On November 1 Mr. Prout wrote Mr. Parks that since November 11 would be a legal holiday, the application would be made on November 12. Later in November Mr. Prout promised Mr. Parks that he would not ask for probate of the will at that time. It was subsequently discovered that the will was probated on November 5. Mr. Prout, however, states that he never made any such promise.

On December 31, 1953, Stevens moved to dismiss the petition on the grounds (1) that no *caveat* had been filed to the will within one year from the date of its probate, and (2) that the petition to revoke the letters testamentary was not filed within thirty days after the probate.

At the hearing on the motion to dismiss, Mr. Parks testified that he understood that Langrehr was a patient in the Pinel Clinic at Ellicott City at the time he executed the will in dispute. He declared that he received a letter from Mr. Prout on November 8, 1952, advising that neither he nor Stevens would appear in the Orphans' Court on November 12; that he thereupon phoned Mr. Prout to make an appointment and received two postal cards, dated November 11 and 12, neither of which made any mention of the fact that the will had been probated; and that he was utterly amazed when he discovered subsequently that the will had been probated on November 5.

Mrs. Clemence C. Burwell, Deputy Register of Wills, testified that Mrs. Gessler's notice of intention to *caveat* the will had been received in the office of the Register of Wills but had been overlooked. She said that the cause of the oversight was that the notice had been placed in the general correspondence file, instead of in the file of the Langrehr estate.

Stevens did not testify. Mr. Prout testified that he accompanied Stevens to the Court House in Annapolis on October 24, 1952, and that Mrs. Burwell, the Deputy Register of Wills, informed them that no notice of intention to *caveat* Langrehr's will was on file, and in reliance upon her statement the Orphans' Court admitted the will to probate. Mr. Prout admitted that Mr. Parks had told him that he had sent to the Register of Wills a notice of intention to *caveat,* but he added that he told Mr. Parks that he did not see the notice when he was in the office of the Register of Wills on October 24. Mr. Prout further testified that on November 5 Stevens phoned him from Annapolis that Mrs. Burwell informed him that no notice of intention to *caveat* had been filed,

and hence the Court would grant him letters testamentary if he wanted them. Mr. Prout explained that he thereupon advised Stevens to qualify.

Mr. Prout was asked on cross-examination whether he had any duty to a brother lawyer to conduct his business in an ethical manner. He answered: "No, I don't. Being a lawyer, my duty was to my client, Mr. Stevens."

On March 9, 1954, the Court dismissed the petition, stating (1) that it was not filed within one year after the probate of the will, and (2) that there was no satisfactory explanation why some of the next of kin could not have discovered within a reasonable time that the will had been probated. The four next of kin appealed from the order of dismissal.

It is conceded that the petition to revoke the letters testamentary was not filed within one year after the probate. The will was probated in November, 1952, and the petition was filed in December, 1953. It is also true that under the law of Maryland no will or other testamentary paper is subject to *caveat* or other objection to its validity after the expiration of one year from its probate. Code 1951, art. 93, sec. 372. But in the case before us a notice of intention to *caveat* the will was filed before the will was probated, and even before it was exhibited to the Register of Wills. The Maryland Testamentary Act permits a person to file a *caveat* or statement of objections to a will before it is probated. The Act provides that if any person whatever shall enter a *caveat* to a will, either before or after it is exhibited to the Orphans' Court or Register of Wills, the said *caveat* shall be decided by the Court. Code 1951, art. 93, sec. 376. We have definitely held that when a *caveat* is filed to a will before it is admitted to probate, the Orphans' Court cannot validly probate the will until the *caveat* is disposed of. *Keene v. Corse*, 80 Md. 20, 22-23, 30 A. 569; *Gilbert v. Gaybrick*, 195 Md. 297, 305, 73 A. 2d 482.

In this State it is a common practice to file with the Register of Wills an informal notice of intention to *caveat* a will before it is admitted to probate in order to serve

as a preliminary step to a formal petition. The purpose of such a preliminary notice is to prevent the probate of a will pending the filing of a formal *caveat* petition. Of course, under ordinary circumstances the preliminary notice must be seasonably followed by a *caveat* petition. The law is settled that where a *caveat* is filed before the probate of a will, the counsel fees and costs incurred in defending the will cannot be paid out of the estate. *Tilghman v. France,* 99 Md. 611, 616, 59 A. 277; *Decker v. Fahrenholtz,* 107 Md. 515, 518, 68 A. 1048.

As we have seen, the notice of intention to *caveat* the will in this case was misplaced in the office of the Register of Wills and was completely lost and forgotten for over a year. This mistake was made through no fault of the next of kin or their attorney, and should not be allowed to deprive the next of kin of their right of action and their day in court.

The probate of the will was invalid for the further reason that no notice of the probate of the will was given to any of the next of kin, and none of the next of kin was present at or before the time of the probate. The statute provides that in the event that none of the next of kin attend at the offering of the will for probate, and no notice appears to have been given, the Court may either (1) direct summons to the next of kin, or some one or more of them, to appear to show cause why the will should not be probated, or (2) direct such notice to be given in the newspapers or otherwise as the Court may think proper. Then, if no objection is made or no *caveat* entered, the Court may take the probate. On the other hand, if objection is made, the Court shall determine according to the testimony produced on both sides. Code 1951, art. 93, sec. 375.

This statute is mandatory. It prescribes the conditions precedent which must be fulfilled before a will can be admitted to probate. If the Court admits a will to probate without complying with the statutory requirements, the probate is invalid. *Travers v. Lavender,* 197 Md. 652, 81 A. 2d 44; *Watkins v. Barnes,* 203 Md. 518, 102

A. 2d 295, 297. Of course, if the probate is invalid, it follows that the grant of letters testamentary is likewise invalid.

We are mindful of the established principle that when a party attacks the probate of a will on the ground that no notice had been given to the next of kin, as required by the statute, he must file his petition within a reasonable time after acquiring knowledge of that fact. The Court of Appeals has adopted the rule that a petition to revoke the probate of a will should be filed within 30 days after the petitioner has received knowledge of the probate or such facts as would put him on inquiry that would disclose such probate. Likewise, a petition to revoke letters of administration or letters testamentary should be filed within 30 days after the petitioner has received knowledge of the grant of letters or such facts as would put him on inquiry that would disclose that letters had been granted. *Watkins v. Barnes,* 203 Md. 518, 525, 102 A. 2d 295.

We cannot find merit, however, in the belief of the Court below that since the Deputy Register of Wills had notified the legatees of the amounts of their legacies, they were put on inquiry that would disclose that the will had been probated and that letters testamentary had been granted. It is important to keep in mind that the next of kin in this case were relying upon Mr. Parks, their attorney; that he had filed a notice of intention to *caveat*; and that his notice was misplaced in the office of the Register of Wills. Mr. Parks swore that he did not inquire about the Langrehr estate in the office of the Register of Wills between November, 1952, and December, 1953, because he felt certain that he was fully protected by the notice which he had filed. Mr. Parks had the right to assume that the notice was properly filed by the Register of Wills and that no will would be probated without giving him a right to be heard, especially since Mrs. Gessler had never been notified that her letters of administration had been revoked. It is also significant that Mr. Parks swore at the trial of the case (1) that

Mr. Prout told him that Langrehr, during his lifetime, had given Stevens "some $25,000 or $30,000, which was everything he owned, so that there was no estate"; and (2) that Mrs. Gessler had not taken any action as administratrix during the period of one year because she had no assets in her hands and Mr. Prout had declared that there were no assets in the estate. Mr. Prout, however, denied that he gave Mr. Parks any estimate of the amount of the estate.

In view of the unusual circumstances in this case, we are convinced that the Court below erred in dismissing the petition of the next of kin. We will therefore reverse the order appealed from and remand the case with instructions to the Court not only to revoke the letters testamentary, but also to revoke the probate of the will under the prayer for general relief.

*Order reversed and case remanded, the costs to be paid by William W. Stevens personally.*