*Amy Shealer v. George Straka*, No. 38, September Term, 2017.  Opinion by Getty, J.

**ESTATES & TRUSTS — PROBATING A WILL —PETITION TO CAVEAT**

Pursuant to the plain language of Md. Code (1974, 2011 Repl. Vol.), Estates & Trusts ("ET") § 5-207, an orphans' court is required to hold a judicial probate proceeding when an interested party files a petition to caveat after administrative probate.  Similarly, an orphans' court is required to hold a new judicial probate proceeding when an interested party files a petition to caveat after judicial probate.  In addition, the legislative history confirms that the Maryland General Assembly intended to create this single procedure, *i.e.*, a judicial probate hearing, for a petition to caveat when it enacted ET § 5-207(b). Therefore, there is no requirement that the orphans' court stay all of the proceedings upon the filing of a petition to caveat.  In this case, the Orphans' Court for Worcester County did not err by refusing to stay the proceeding when George M. Straka filed a petition to caveat the Decedent's Will.

**ESTATES & TRUSTS — PROBATING A WILL —TRANSMITTING ISSUES TO A COURT OF LAW**

The plain language and the legislative history of ET § 2-105 reveals that the legislature did not intend to change the longstanding procedure for transmitting factual issues to a court of law upon a request from an interested party in a plenary proceeding.  As such, an orphans' court is required to frame and transmit issues to the circuit court when an interested party makes such a request before the orphans' court has made an ultimate determination of those issues.  Although there were many procedural abnormalities in the case *sub judice*, which the Orphans' Court for Worcester County could have corrected in any number of ways, this Court concludes that the Orphans' Court for Worcester County erred in denying George M. Straka's request to transmit issues to a court of law. Specifically, we conclude that this denial constituted error because the Orphans' Court had not made a final determination on the issues at the time of the request and because the Orphans' Court had sufficient information to determine that the judicial probate hearing would be a plenary proceeding and that the parties disagreed on key factual issues contained in the incomplete petition to caveat.  This Court also holds that the error was not harmless because it deprived George M. Straka as a caveator the right to have factual issues sent to a court of law for a trial by jury.

Orphans' Court for Worcester County
Estate No. 16463
Argued: January 4, 2018

IN THE COURT OF APPEALS
OF MARYLAND

No. 38

September Term, 2017

---

AMY SHEALER

v.

GEORGE STRAKA

---

Barbera, C.J.
Greene,
Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

---

Opinion by Getty, J.

---

Filed: April 26, 2018

> The Bench, the Bar, and the general public should no longer tolerate the condition which 170 years of patchwork amendments have created out of the relatively simple Act of 1798. The Commission's basic job, therefore, has been to attempt to create reasonable order in the law of decedents' estates. . . . Most of the changes of substance are motivated by one salient thought – the handling of estates should be accomplished with efficiency, expedition, and as little red tape and expense as possible.
>
> Honorable William L. Henderson,[1] *"Letter of Transmittal" of the Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland*, December 5, 1968

In this appeal, we must determine the proper procedure before an orphans' court in two scenarios: (1) when an interested party files a petition to caveat a will; and (2) when an interested party requests that the orphans' court transmit an issue to the circuit court for a trial by jury. In deciding the appropriate procedures, this Court will analyze whether the Maryland General Assembly intended to eliminate the need for an automatic stay after a party files a petition to caveat when it enacted Md. Code (1974, 2011 Repl. Vol.), Estates & Trusts ("ET") § 5-207. Specific to this appeal, we must determine if the Orphans' Court for Worcester County erred by proceeding with a judicial probate hearing after an interested party filed a petition to caveat and whether it erred by denying a request to

---

[1] The Honorable William L. Henderson served as Chairman of the Governor's Commission to Review and Revise the Testamentary Law of Maryland, which was appointed by Governor J. Millard Tawes pursuant to Joint Resolution No. 23 passed by the Maryland General Assembly in the 1965 legislative session. Before serving as Chairman, the Honorable William L. Henderson served as a judge on the Supreme Bench of Baltimore City from 1943 to 1944, an associate judge on the Court of Appeals from 1944 to 1964, and then served as the Chief Judge of the Court of Appeals in 1964.

transfer issues to a court of law. Moreover, this Court must decide whether any error by the Orphans' Court for Worcester County was harmless.

For the following reasons, we conclude that when it enacted ET § 5-207(b), the General Assembly intended to mandate a judicial probate hearing as the single, simple procedure after a party files a petition to caveat. As such, an automatic stay is not required when a petition to caveat a will is filed. We also hold that when an interested party in a caveat case makes a request to transfer undecided factual issues to a circuit court, the orphans' court is required to transmit the issues to a court of law pursuant to ET § 2-105(b). In this case, the Orphans' Court for Worcester County did not err in refusing to stay the judicial probate proceeding simply because a petition to caveat was filed; however, the orphans' court did err when it refused a party's request to transmit unresolved factual issues to a court of law. We conclude that this error was not harmless. Accordingly, we reverse the judgment of the Court of Special Appeals and remand the matter back to the Orphans' Court for Worcester County.

**BACKGROUND**

On March 28, 2016, Andrea Ayers Straka ("the Decedent") died at the age of thirty-seven from pneumonia caused by Methicillin-resistant Staphylococcus aureus. Two days later, on March 30, 2016, the Decedent's father, George M. Straka ("Mr. Straka"), filed a petition for administrative probate of a regular estate with the Worcester County Register of Wills. In his petition, Mr. Straka affirmed that he made a diligent effort to search for a will prepared by the Decedent. Mr. Straka's petition also included a statement that no will existed to the best of his knowledge. In an attachment to the petition, Mr. Straka indicated

2

that the Decedent's estate included approximately $300,000 in real property. After considering the petition, the Register of Wills of Worcester County issued an administrative probate order, appointing Mr. Straka as personal representative of the Decedent's estate.

The same afternoon that Mr. Straka filed a petition for administrative probate, a party[2] filed the Last Will and Testament of the Decedent ("the Decedent's Will") with the Worcester County Register of Wills. The Decedent's Will indicated that the document was prepared on July 15, 2015 in Berlin, Maryland. In addition, the Decedent's Will stated that the Decedent had never been married and had no biological children. In the Will, the Decedent appointed William Jay Mumma, Jr. ("Mr. Mumma"), the Decedent's best friend, and Amy Shealer ("Ms. Shealer") as personal representatives and executors of the Decedent's Will.[3] The Decedent's Will bequeathed her real property, in addition to all of

---

[2] In a petition for administrative probate, Ms. Amy Shealer, a personal representative and executor of the Decedent's Will, alleged that she found the Decedent's Will "among the Decedent's important papers and [she] delivered [the Will] to the Register of Wills for Worcester County." The Court of Special Appeals raised the presumption that the law firm Adelberg, Rudow, Dorf & Hendler, LLC filed the Decedent's Will with the Register of Wills because the record indicates that the Register of Wills contacted the firm to inquire whether they possessed the Decedent's Will on the same date that the Decedent's Will was filed. The record indicates that the firm sent a response to the Register of Wills, stating that the "firm is in compliance with the requirements imposed by" ET § 4-202, which requires that a person in custody of a testator's will shall deliver the will to the appropriate county's register of wills. However, compliance with ET § 4-202 might simply mean that the firm was not the custodian of the Decedent's Will. Therefore, we cannot confirm exactly who filed the Decedent's Will.

[3] Although the Decedent's Will named both Mr. Mumma and Ms. Shealer as co-personal representatives of the estate, the record indicates that Mr. Mumma's attorney informed the orphans' court that he declined to serve as a personal representative.

3

the personal property contained in the house, to Mr. Mumma, Ms. Shealer, and her godchildren: Ava and Abigail Simone.

The Decedent's Will also included a section of specific bequests, which directed that an investment account be sold, converted to cash value, and be distributed in the following manner: (1) $70,000 to Mr. Straka and $30,000 to Mr. Straka's two daughters, the Decedent's half-sisters; (2) $100,000 to her attorney; (3) $10,000 to her law firm to be donated to any charity of their choosing; (4) $10,000 to her friend, Robert Staph; (5) $10,000 to the charity The Delmarva Cat Connection to be donated in the Decedent's name; (6) $25,000 to her friends and financial advisors, Lora and Greg Gann; and (7) a division of the remaining balance: fifty percent to Mr. Mumma; thirty percent to Ms. Shealer; and, twenty percent to be used for fees and taxes. Any remainder of the Decedent's estate is distributed equally between Mr. Mumma and Ms. Shealer. The Decedent's Will also bears the signature of two witnesses, Mark Anthony Burdette and Alan W. Forsythe.

On April 5, 2016, Ms. Shealer filed a petition for administrative probate of a regular estate. Ms. Shealer's petition included an affirmation, stating that the Decedent's Will was found among her important papers and delivered to the Register of Wills for Worcester County. Ms. Shealer indicated that the only other proceedings regarding the Decedent's estate was the regular estate petition for administration filed by Mr. Straka. In her petition, Ms. Shealer requested that she be appointed personal representative of the Decedent's estate. In addition, Ms. Shealer included two specific requests under the petition's section for additional relief: (1) that the Decedent's Will be admitted to judicial probate; and (2) that the orphans' court conclude that the Decedent's Will was duly executed, the Decedent

4

was legally competent to make the Will, and the Decedent's Will was properly attested to and executed by two witnesses. Ms. Shealer listed Mr. Straka, the Decedent's two half-sisters, and Mr. Mumma as interested persons.

In response to Ms. Shealer's petition, the Register of Wills for Worcester County appointed Ms. Shealer as personal representative of the Decedent's estate. Moreover, the Orphans' Court for Worcester County issued a notice of judicial probate, which indicated that Ms. Shealer had filed a petition for judicial probate of the Decedent's Will. The orphans' court also issued a notice of hearing, which notified the interested parties that the judicial probate hearing would be held on April 19, 2016. The court sent the two notices to Mr. Straka as an interested person. In addition, the Register of Wills for Worcester County also sent Mr. Straka a letter informing him that the Letters of Administration appointing Mr. Straka as personal representative of the Decedent's estate were revoked after the Decedent's Will was filed. The letter further informed Mr. Straka that he "will be the Special Administrator of the estate[,] which means you cannot act for the estate without the prior approval of the [o]rphans' [c]ourt." The letter reminded Mr. Straka that the judicial probate hearing would be held on April 19, 2016, at which time he would be able to address the orphans' court.

After receiving the notice and letter, Mr. Straka obtained counsel in preparation for the judicial probate hearing. Counsel for Mr. Straka filed his entry of appearance on April 15, 2016, four days before the scheduled hearing. Along with his entry of appearance, Mr. Straka's attorney filed a motion for postponement, asserting that the judicial probate hearing was no longer necessary because Mr. Straka intended to file a petition to caveat as

5

well as a petition to transmit issues to the Circuit Court for Worcester County. Moreover, the motion alleged that counsel for Mr. Straka had a scheduling conflict with the April 19, 2016 hearing date.

Mr. Straka's attorney also filed a petition to caveat, which indicated that Mr. Straka believed the Decedent's Will to be invalid. Specifically, Mr. Straka alleged that the Decedent's Will should not be admitted to probate for several reasons: the Decedent lacked capacity to make the Will; the Decedent's Will was procured after undue influence; the Decedent's Will was not signed by the Decedent or any other person in her presence; the Decedent's Will was not properly executed or attested to in accordance with Maryland law; the Decedent's Will was not known by the Decedent before or at the time of execution; and the Decedent's Will was procured by fraud. The petition to caveat requested multiple prayers of relief, including a determination that the Decedent's Will is invalid with no legal effect and that the Decedent died intestate. Mr. Straka also requested that he, or a neutral third party, be appointed as personal representative of the Decedent's estate. However, the petition to caveat failed to provide a complete list of interested persons.

The April 19, 2016 judicial probate hearing was held before two orphans' court judges. Mr. Straka, Ms. Shealer, and Mr. Mumma all appeared at the hearing with counsel. The orphans' court first permitted the parties to make an opening statement. Counsel for Mr. Straka informed the court that he had previously filed a petition to caveat and had filed that day an amended petition to caveat with a complete list of interested parties. Mr. Straka's attorney argued the petition to caveat stayed the action until the issues in the petition are determined. In addition, Mr. Straka's counsel informed the court that they

6

were filing "petitions for issues" and that they were asking "that issues be framed to go to the circuit court for a jury trial." After hearing opening statements, the orphans' court denied the motion for postponement and indicated that an order would be issued to that effect. The orphans' court did not rule on Mr. Straka's petition to caveat, amended petition to caveat, or the request to transmit issues to a court of law, but instead proceeded with the judicial probate hearing and allowed Ms. Shealer's counsel to call witnesses to testify. Before the witnesses began their testimony, counsel for Mr. Straka objected to any testimony, claiming that the only immediate duty of the orphans' court was to appoint a special administrator of the estate because of the petition to caveat. The orphans' court overruled the objection.

Ms. Shealer first called Alan W. Forsythe ("Mr. Forsythe"), who testified that he witnessed the Decedent sign the Decedent's Will and signed the Decedent's Will himself at the Decedent's home on July 15, 2015. Mr. Forsythe further testified that he witnessed Mark Anthony Burdette ("Mr. Burdette") sign the Decedent's Will on the same date. On cross-examination, counsel for Mr. Straka asked Mr. Forsythe about his alleged previous convictions for theft, disorderly conduct, and passing a bad check. Mr. Forsythe testified that he did not recall the Decedent reviewing her Will or explaining what the document was beyond stating it was her Will at the time he signed it. Ms. Shealer then called her second witness, Mr. Burdette. During his testimony, Mr. Burdette stated that he recognized the Decedent's Will, that he witnessed the Decedent sign the Will, that he witnessed Mr. Forsythe sign the Decedent's Will, and that he signed the Decedent's Will at the same time. Mr. Burdette further testified that he did not believe that the Decedent was acting peculiar

7

or slurring her words on the day that each of them signed the Decedent's Will.  On cross-examination, Mr. Burdette indicated that the Decedent did not explain that the document he was signing was a Will.  Mr. Burdette also testified that he did not read the document and did not know who prepared the Decedent's Will.

After the testimony of the witnesses concluded, Mr. Straka's attorney orally moved to "frame issue[s] to send to the [c]ircuit [c]ourt[.]"  Counsel for Mr. Straka also indicated that the relevant statute states "that anytime that a party asks for issues to be framed and transmitted to the [c]ircuit [c]ourt this [c]ourt must do so as long as it's before you have issued a ruling."  In sum, counsel requested that the orphans' court "transmit a factual issue, which would be consolidated with the caveat issues[.]"  Counsel for Ms. Shealer indicated to the orphans' court that his client would be entitled to file a response to the request to transmit issues to a court of law.  In addition, Ms. Shealer's attorney stated that the purpose of the hearing, *i.e.* to obtain enough evidence to admit the Decedent's Will and appoint a personal representative, had already been served through the testimony of the two witnesses.  After reconvening from a recess to deliberate,[4] the orphans' court denied Mr. Straka's motion to transmit the issues. The orphans' court also denied Mr. Straka's request for the court to consider the petition to caveat because the petition was incomplete.

---

[4] Immediately after the orphans' court reconvened, counsel for Ms. Shealer indicated that Mr. Straka made a symbol of a gun with his hand, pointed it at Mr. Burdette, and mouthed "you're a dead man."  The Court required Mr. Straka to leave the courtroom until the end of the hearing.

8

Ultimately, the orphans' court admitted the Decedent's Will to probate and named Ms. Shealer as personal representative.

That same day, the orphans' court issued an order, confirming the oral rulings made at the hearing. Specifically, the order accepted the Decedent's Will into probate, removed Mr. Straka from his role as special administrator, and named Ms. Shealer personal representative of the estate. In addition, the order recognized the petition to caveat filed by Mr. Straka on April 15, 2016, noting that the petition was incomplete. The order did not address Mr. Straka's motion to transmit issues to the circuit court or his amended petition to caveat filed on April 19, 2016.

On April 26, 2016, Mr. Straka filed a motion to reconsider or to alter and amend the orphans' court judgment, setting forth two main arguments. Mr. Straka first contended that the orphans' court erred when it ignored Maryland case law, which required a probate matter to be stayed when a party files a petition to caveat. In support of his initial argument, Mr. Straka asserted that he filed an initial petition to caveat as well as an amended petition to caveat on the day of the hearing, either of which would require an automatic stay. As to his second argument, Mr. Straka contended that the orphans' court erred when it proceeded to rule on the judicial probate after Mr. Straka made an oral request at the hearing to transmit issues to the circuit court. Mr. Straka argued that the orphans' court was required to frame and transmit the issues to the circuit court pursuant to the Maryland rules and statutes. On May 17, 2016, Ms. Shealer filed an opposition to the motion to reconsider, asserting that the petition to caveat was a nullity given its incompleteness. Ms. Shealer

9

further argued that the orphans' court properly refused to transfer the issues to the circuit court after Mr. Straka's oral petition to transmit certain issues to a court of law.

By memorandum and accompanying order dated June 21, 2016, the orphans' court denied Mr. Straka's motion to reconsider or to alter and amend judgment. The orphans' court specifically concluded that it did not err in refusing to consider the initial petition to caveat because the petition did not comply with the Maryland Rules. Additionally, the orphans' court determined that it properly denied the motion to transmit issues because the only petition to caveat filed at the time was defective.

Mr. Straka filed a timely Notice of Appeal of the orphans' court's April 19, 2016 order, which admitted the Decedent's Will to probate, removed Mr. Straka as special administrator, and named Ms. Shealer as personal representative. The Court of Special Appeals reversed the judgment of the orphans' court in an unreported opinion issued on May 19, 2017. Specifically, the Court of Special Appeals held that a petition to caveat stays all proceedings until the caveat is addressed. *Matter of Estate of Straka*, No. 1023, 2017 WL 2210122, at *5 (Md. Ct. Spec. App. May 19, 2017). Ms. Shealer petitioned this Court for a writ of certiorari, which this Court granted on September 12, 2017. *Shealer v. Straka*, 456 Md. 57 (2017). Ms. Shealer presented several questions for our review, which we have rephrased:

> I. How should an orphans' court proceed when an interested party files a petition to caveat?
>
> II. What is the proper procedure when an interested party requests an orphans' court to transmit factual issues to a court of law?

10

III.   Did the Orphans' Court for Worcester County commit error by refusing to consider Mr. Straka's petition to caveat and denying his request to transmit issues?

IV.   Was any error by the Orphans' Court for Worcester County harmless? [5]

## STANDARDS OF REVIEW

The first, second, and third questions in this appeal involve the interpretation and application of a Maryland statute, which is a question of law subject to *de novo* review. *Phillips v. State*, 451 Md. 180, 189 (2017). When this Court interprets a statute, this "Court defers to 'the policy decisions enacted into law by the General Assembly.'" *Reger v. Washington Cty. Bd. of Educ.*, 455 Md. 68, 95 (2017) (quoting *Phillips*, 451 Md. at 196). Therefore, we review the first question presented *de novo* without deference to the orphans' court.

As to the fourth question regarding harmless error, this Court should conduct an "independent review of the record[.]" *Dorsey v. State*, 276 Md. 638, 659 (1976). After a "comprehensive review of the record[,]" the ultimate decision for a reviewing court is

---

[5] In her petition for writ of certiorari, Ms. Shealer presented the following two questions presented:

I.   Did the Court of Special Appeals err in holding that probate proceedings are to be stayed upon the filing of a caveat petition before judicial probate or after administrative probate, continuing the procedure under predecessor statutes recognized by *Keene v. Corse*, 80 Md. 20 (1984) and its progeny, despite the enactment of Estates & Trusts Article § 5-207(b) which omits any language concerning a stay of proceedings from its text?

II.   Was the harmless error standard satisfied by merely showing that the underlying decision from which an appeal is sought is final and binding upon the parties?

11

whether a complainant has shown that prejudice was probable rather than simply showing that prejudice was possible. *Barksdale v. Wilkowsky*, 419 Md. 649, 670 (2011). As such, this Court will conduct an independent, comprehensive review of the record from the orphans' court to determine whether Mr. Straka demonstrated that prejudice was probable.

**DISCUSSION**

"A probate proceeding provides a vehicle for identifying and collecting the decedent's property, paying the debts of the decedent and the estate in an orderly way, and distributing the remainder of the estate to those entitled to share in the estate either under the decedent's will or according to intestate distribution." *Green v. Nelson*, 227 Md. App. 698, 708, *cert. denied*, 448 Md. 725 (2016). Probating a will means proving that certain documents constitute a decedent's last will and testament. *Schlossberg v. Schlossberg*, 275 Md. 600, 625 (1975). In Maryland, the "law confides in the [o]rphans' [c]ourt power to determine whether or not a will should be admitted to probate." *Ades v. Norins*, 204 Md. 267, 272 (1954). In other words, once a party has offered a will for probate, the orphans' court has the authority to find that the will is valid and enforceable, thereby admitting the will to probate. *Id.* The Maryland Estates and Trusts Article provides two ways for an interested person[6] to probate a will: (1) administrative probate by the register of wills; and (2) judicial probate by the orphans' court. *See* ET § 5-101. As the names suggest, the main

---

[6] The Maryland Estates And Trusts Article defines "interested person" as "(1) A person named as executor in a will; (2) A person serving as personal representative after judicial or administrative probate; (3) A legatee in being, not fully paid, whether his interest is vested or contingent; (4) An heir even if the decedent dies testate . . ." ET § 1-101.

12

difference between the two methods of probate is that the first consists of an administrative proceeding without a full hearing and the second is a full judicial proceeding before the orphans' court. When an interested party files a petition for judicial probate, the orphans' court holds a hearing, during which the court can call witnesses, resolve issues of fact, and appoint a personal representative of the estate. *See* ET § 5-401.

Even after a petition for administrative or judicial probate, Maryland law provides an interested party with mechanisms to contest the will if that party believes that the will was not properly executed or that the will was procured by undue influence, fraud, or duress. *See Green*, 227 Md. App. at 709. Specifically, an interested party can file a petition to caveat contesting the validity of the will submitted to probate. *Id. See also* Md. Rule 6-431. Pursuant to ET § 5-207(a), a petition to caveat may be filed within six months of the initial appointment of a personal representative.[7] Particularly significant to the instant case, ET § 5-207(b) explains that if a "petition to caveat is filed before the filing of a petition for probate, or after administrative probate, *it has the effect of a request for judicial probate. If filed after judicial probate, the matter shall be reopened and a new proceeding held as if only administrative probate had previously been determined."* (Emphasis added.)

Along with the option to file a petition to caveat, interested parties can also request that the orphans' court transmit certain factual issues to a court of law. *Ades*, 204 Md. at 272 ("To aid in the execution of that duty, the Legislature has empowered the court to

---

[7] If a will is offered to probate after the appointment of a personal representative, an interested party may file a petition to caveat within three months of the subsequent probate proceeding. ET § 5-207(a).

direct any issue of fact to be tried by plenary proceedings and with the help of a jury.").

Specifically, ET § 2-105 states, "At the request of an interested person made within the time determined by the court, the issue of fact may be determined by a court of law. When the request is made before the court has determined the issue of fact, the court shall transmit the issue to a court of law." *See also* Md. Rule 6-434. This Court has previously recognized that "[a]lthough the transmission of issues to a law court for trial is most frequently used in caveat cases, it is a procedure available in all cases in controversy within the jurisdiction of the orphans' court[.]" *Myers v. Hart*, 248 Md. 443, 447 (1968).

The parties in the case *sub judice* primarily disagree as to the proper procedure when an interested party attempts to employ these two mechanisms for contesting the validity of a will. Specifically, this Court will analyze: (1) whether the General Assembly, when it enacted ET § 5-207, created a new procedure for orphans' courts after an interested party files a petition to caveat a will; (2) whether the General Assembly intended to change the procedure after an interested party requests that the orphans' court transmit caveat issues to a court of law; (3) whether these procedures implicate the case *sub judice*; and (4) whether any error on the part of the Orphans' Court for Worcester County was harmless. As such, we will address these issues in turn.

### A.       *Proper Procedure in Orphans' Court after a Party files a Petition to Caveat*

Ms. Shealer primarily contends that the plain and ordinary language of ET § 5-207(b) is unambiguous in that a petition to caveat constitutes a request for judicial probate. Specifically, Ms. Shealer argues that the General Assembly would have included language requiring a stay in ET § 5-207 if the legislature intended for orphans' courts to

14

automatically stay the proceedings after an interested person filed a petition to caveat. Ms. Shealer maintains that the Court of Special Appeals erred in analyzing the legislative history of ET § 5-207(b) and argues that the statutory history confirms that a judicial probate hearing is the new, simple procedure, which is also outlined in the clear text of the statute.

In response, Mr. Straka asserts that the Court of Special Appeals correctly determined that the plain language of the statute and the legislative history do not indicate an intention to abrogate the common law regarding petitions to caveat. Mr. Straka argues that even after the legislature enacted ET § 5-207, orphans' courts are required to stay all probate proceedings in the corresponding matter. *See Keene v. Corse*, 80 Md. 20 (1894). Overall, Mr. Straka contends that the orphans' court below deprived him of his right to pursue one of the two mechanisms of contesting the validity of a will by failing to stay the proceeding after he filed a petition to caveat.

When conducting a statutory construction analysis, this Court's principal goal is to determine the legislative intent underlying the relevant statutes. *See Downes v. Downes*, 388 Md. 561, 571 (2005). "We begin our analysis by looking to the normal, plain meaning of the language of the statute, reading the statute as a whole to ensure that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Brown v. State*, 454 Md. 546, 551 (2017). In some instances, a reviewing court will be able to discern the legislative intent from the clear and unambiguous statutory language; nevertheless, "[o]ccasionally we see fit to examine extrinsic sources of legislative intent merely as a check of our reading of a statute's plain language." *Reger*, 455 Md. at 96

15

(quoting *Phillips*, 451 Md. at 196). The key extrinsic source for purposes of confirming the legislative intent is often the legislative history of the pertinent statutes. *See State v. Roshchin*, 446 Md. 128, 140 (2016) ("But even when the language is unambiguous, it is useful to review legislative history of the statute to confirm that interpretation and to eliminate another version of legislative intent alleged to be latent in the language.").

Employing these principles, this Court will first consider the plain language of the statutes. ET § 5-207 reads in pertinent part:

> (b) *If the petition to caveat is filed before the filing of a petition for probate, or after administrative probate, it has the effect of a request for judicial probate.* If filed after judicial probate the matter shall be reopened and a new proceeding held as if only administrative probate had previously been determined. In either case the provisions of Subtitle 4 of this title apply.

(Emphasis added.) The first sentence of the above statutory text clearly indicates that a petition to caveat filed after a petition for administrative probate shall be treated as a request for judicial probate. The language of the statute appears unambiguous, especially when considering the second sentence in tandem with the first. When an interested person files a petition to caveat after an individual has filed a petition for administrative probate, then the orphans' court will hold a judicial probate proceeding; however, when a petition to caveat is filed after a judicial probate proceeding has already occurred, then the petition to caveat requires the orphans' court to conduct a new judicial probate proceeding. Our reading of the plain language is confirmed by the last sentence that the legislature included in the text: "In either case the provisions of Subtitle 4 of this title apply." Subtitle 4, entitled Judicial Probate, discusses the nature of judicial probate and a judicial probate hearing.

16

Therefore, the clear language of ET § 5-207(b) dictates that a timely petition to caveat requires the orphans' court to hold a judicial probate hearing pursuant to the Judicial Probate Subtitle.

This Court concludes that the intent of the General Assembly is discernable from the plain and unambiguous language of the statute: an orphans' court will conduct a judicial probate proceeding after a party files a petition to caveat. Nothing in this mandated procedure requires the orphans' court to stay the proceedings upon the filing of a petition to caveat a will. Indeed, an automatic stay would be unnecessary given the statute's unequivocal requirement that the orphans' court hold a judicial probate hearing before admitting a will to probate. Therefore, we conclude that the legislative intent to form a simple, mandatory procedure for a judicial probate proceeding upon the filing of a petition to caveat is evident from the language of the statute. Although this Court concludes that the language of ET § 5-207(b) is clear and unambiguous, we will also consider the legislative history of the statute to confirm the legislative intent. *See Reger*, 455 Md. at 96; *Roshchin*, 446 Md. at 140.

In 1965, the General Assembly adopted Joint Resolution No. 23, which required the Governor to appoint a Commission to study and revise the Maryland testamentary laws. Pursuant to the Joint Resolution, Governor J. Millard Tawes appointed the Governor's Commission to Review and Revise the Testamentary Law of Maryland ("the Commission"), naming William L. Henderson as Chairman of the Commission. In 1966, the Commission submitted its First Report to the Governor, making recommendations to revise Maryland's death tax structure. On December 5, 1968, the Commission submitted

17

a Second Report, recommending a new testamentary article in the Maryland Code as well as substantive changes to the law.[8]  The legislation proposed by the Commission in the Second Report passed the General Assembly during the 1969 legislative session.  *See* 1969 Md. Laws, ch. 3.  The Commission submitted a "Letter of Transmittal" with the Second Report in which the Commission explained that the Report was organized by the proposed sections of the statute, which are followed by Comments[9] that "describe the relationship between the present Maryland law and the recommendations of the Commission."  As such, the Commission's Comments on the relevant statutes serve as a key insight into the legislature's intent.

In the Second Report, the Commission submitted a proposal for Md. Code (1969) Art. 93 § 5-207 regarding caveat proceedings.[10]  The Commission's proposed legislation

---

[8]  *See* Second Report of Governor's Commission to Review and Revise the Testamentary Law of Maryland, Article 93 Decedents' Estates (1968)  [https://perma.cc/G6HW-3FGG].

[9] These Comments were republished when the statutes were recodified in the Estates and Trusts Article of the Maryland Code in 1974.

[10] The Commission's proposed Art. 93 § 5-207 read in full:

(a) Petition to Caveat.  Whether or not a Petition for Probate has been filed, any interested person may, until the expiration of four months following an administrative or a judicial probate (unless caveat proceedings had once been held and finally disposed of), file a Petition to Caveat the will.

(b) Effect of Petition.  If the Petition to Caveat is filed before the filing of a Petition for Probate, or after administrative probate, it shall have the effect of a request for judicial probate.  If filed after judicial probate the matter shall be reopened and a new proceeding held as if only administrative probate had previously been determined.  In either case the provisions of Part 4 of this Subtitle shall apply.

included almost identical language to the present version of ET § 5-207(b). The Commission's Comment to § 5-207 stated:

> *In place of all of the provisions of the prior law relating to a notice to caveat and the caveat procedures the Commission has substituted the single, simple procedure contained in Section 5-207* which it believes to be equally effective and protective of the caveator's rights. *In the event of a caveat, judicial probate is mandatory*. See Section 5-402.

> Except for the reduction of the period of caveat from six months to four months (to be consistent with the period within which creditors' claims must be filed) Section 5-207 is intended to follow the present law in §§379 and 381 (Md). With the *new procedure here proposed*, including the extensive protection granted to interested persons through the requirement of formal notice, the Commission suggests that the sometimes used technique of first filing a notice of intention to caveat [§375 (Md)] is no longer necessary or useful. See also *Karwacki*, "The Right to Contest a Will in Maryland," 16 Md. L. Rev. 61 (1956).

> The procedure for the hearing of a caveat case, including the transmission of issues to a court of law, is set forth in Sections 2-105 and 5-404. No change in the present law respecting such procedure is intended.

> The Commission also believes that it would serve no useful purpose to outline in the statute the available grounds for caveat. It has assumed, and intends, that the existing law of Maryland will continue to apply; see Sykes, Contest of Wills in Maryland (1941), and Note, "The Presumption of Undue Influence arising from a Confidential Relation Between a Testator and Beneficiary in a Will Contest," 17 Md. L. Rev. 153 (1957).

(Emphasis added). This Comment makes pellucid that the Commission intended to propose a new procedure for the orphans' court after a party files a petition to caveat. One sentence makes this revision explicit: "In the event of a caveat, judicial probate is mandatory." The Commission's Comment acknowledged that they were proposing a "new

19

procedure" "[i]n place of all of the provisions of the prior law relating to a notice to caveat and the caveat procedures" by the revisions to § 5-207. Therefore, this Comment confirms this Court's analysis of legislative intent based on the plain language of ET § 5-207: a judicial probate hearing is the new procedure for orphans' courts after a party files a petition to caveat.

Furthermore, the Commission made clear that its recommendations would also eliminate the need for any interested party to file a notice of intention to caveat before filing a formal petition to caveat. Before the Commission's Second Report, interested parties were able to file a notice of intention to caveat before filing the petition to caveat as a means of invoking the previous procedure: a stay in the orphans' court.

> In this State it is a common practice to file with the Register of Wills an informal notice of intention to *caveat* a will before it is admitted to probate in order to serve as a preliminary step to a formal petition. The purpose of such a preliminary notice is to prevent the probate of a will pending the filing of a formal *caveat* petition. Of course, under ordinary circumstances the preliminary notice must be seasonably followed by a *caveat* petition.

*Gessler v. Stevens*, 205 Md. 498, 504–05 (1954). This "notice of intention to *caveat* may operate as a temporary stay." *Kent v. Mercantile-Safe Deposit & Tr. Co.*, 225 Md. 590, 594 (1961). As this case law underscores, the purpose of filing a notice of intention to caveat was to prevent the orphans' court from probating a will before the caveat issues are heard, thereby invoking a stay of proceedings. However, the Commission's recommended procedure for an orphans' court upon the filing of a petition to caveat, *i.e.* to hold a judicial probate hearing before admitting a will to probate, removes the need for a party to invoke

20

a stay. In doing so, the Commission has implicitly removed the need for a party to first file a notice of intention to caveat. In adopting the Commission's recommendations, the General Assembly intended to remove any system in which a stay would be necessary, including filing a notice of intention to caveat. Instead, the Commission and the General Assembly intended to create a new system whereby the filing of a petition to caveat would automatically require the orphans' court to schedule and hold a judicial probate hearing before admitting a will to probate.

Instead of relying on the plain language of the statute and the emphasized portion of the Commission's Comment, the Court of Special Appeals found the following line from the Comment persuasive: "Section 5-207 is intended to follow the present law in §§ 379 and 381 (Md)." As such, the Court of Special Appeals focused on the language of these prior statutes as well as the case law interpreting these sections. Md. Code, Art. 93 § 379 (1957) stated:

> If any person whatever shall enter a caveat against such will or codicil, either before or after it shall be exhibited to the register of wills or orphans' court, the said caveat shall be decided by the court. If any person shall enter a caveat against any will or codicil of which probate shall have been taken by the register as aforesaid, *no letter testamentary shall be granted until a determination shall be had in the orphans' court.*

(Emphasis added). And Md. Code, Art. 93 § 381 (1957) provided:

> If the probate of any will or codicil be taken as aforesaid without contest, any person, before letters testamentary or of administration with a copy of the will shall be actually granted, may file a petition to the court praying that the case may be again examined and heard; and *thereupon the orphans' court shall delay the granting of letters until a decision shall be had on the petition*, and in case the letters shall have been granted, and any person shall file such

21

petition, and the court on hearing both sides—that is to say, the petitioner and the grantee of such letters—shall decide against the probate, the letters aforesaid shall be revoked, and the power of the party under the letters shall cease; and the said will shall not be proved in any other county, unless the decision be reversed on appeal.

(Emphasis added). In so doing, the Court of Special Appeals held "that the stay requirement applies" once a party files a petition to caveat.

It is crucial for this Court to clarify what it means to say that a petition to caveat operates as a "stay." As the Fourth Circuit recognized, the sixth edition of Black's Law Dictionary "defined 'stay' as: A stopping; the act of arresting a judicial proceeding by the order of a court. Also that which holds, restrains, or supports. A stay is a suspension of the case or some designated proceedings within it. It is a kind of injunction with which a court freezes its proceedings at a particular point." *Teshome-Gebreegziabher v. Mukasey*, 545 F.3d 285, 290–91 (4th Cir. 2008). Therefore, the term "stay" in a legal context is often used to suggest that the entire proceeding or case is stopped and suspended.

In the context of a petition to caveat, the plain language of ET § 5-207(b) and the Commission's comment clearly indicates that the effects of a petition to caveat are twofold: (1) the petition constitutes a request for a judicial probate hearing; and (2) the orphans' court cannot admit the will to probate until after the judicial probate hearing. Indeed, creating a new procedure for a judicial probate hearing would be rendered useless if the orphans' court could simultaneously schedule a judicial probate proceeding and admit the will to probate. Therefore, a petition to caveat does not stay the proceedings, *i.e.*, the filing of a petition to caveat does not stop all the proceedings related to the will. After a party

22

files a petition to caveat, the opposing party is permitted to file a response to the petition within twenty days after service. *See* Md. Rule 6-122(b)(2). In addition, the orphans' court may order a limited search for assets titled in the name of the decedent as well as order a financial institution to enter the safe deposit box of a decedent in the presence of the Register of Wills to locate the will. *See* Md. Rule 6-122(c) & (d). An orphans' court may also appoint a special administrator upon the filing of a petition to caveat by an interested person. *See* Md. Rule 6-454(a). As such, the filing of a petition to caveat does not effect a "stay" on the entire proceeding; instead, a petition to caveat simply prevents the orphans' court from admitting the will to probate until after the judicial probate proceedings are concluded. To the extent that the Court of Special Appeals held that a petition to caveat prevents the parties and the orphans' court from pursuing any of the permissible actions related to the same judicial probate proceeding, including those described above, this Court disagrees.

This interpretation is confirmed by the former statutes on which the Court of Special Appeals relied: Md. Code, Art. 93 §§ 379 and 381. The Court of Special Appeals was correct in noting that the Commission stated that "Section 5-207 is intended to follow the present law in §§379 and 381 (Md)." The language of § 379 indicates that a caveat must be determined by the orphans' court even when the will has previously been submitted for administrative probate with the register of wills. Specifically, this section of the former statute makes clear that when "any person shall enter a caveat against any will or codicil of which probate shall have been taken by the register as aforesaid, *no letter testamentary shall be granted until a determination shall be had in the orphans' court*." Md. Code, Art.

23

93 § 379 (emphasis added). There is no mention of a "stay" in the language; however, the plain language of the statute instructs an orphans' court to wait to issue letters testamentary until the court makes a determination on the petition to caveat. As the Commission's comment reveals, the requirements of § 379 remain in effect even after the legislature changed the procedure for a petition to caveat to a judicial probate hearing. *See* Commission's Comment to § 5-207 ("Section 5-207 is intended to follow the present law in §§379 and 381(Md).").

Similarly, § 381 requires that an orphans' court delay granting letters of administration or letters testamentary until the court determines the issues presented in a petition to caveat even when the court has previously held a probate hearing with no opposition. *See* Md. Code, Art. 93 § 381 ("If the probate of any will or codicil be taken as aforesaid without contest, any person, before letters testamentary or of administration with a copy of the will shall be actually granted, *may file a petition to the court praying that the case may be again examined and heard; and thereupon the orphans' court shall delay the granting of letters until a decision shall be had on the petition*[.]") (emphasis added). This statute also does not halt any and all proceedings related to the contested will after a petition to caveat is filed. Instead, the statute instructs the orphans' court that when a party files a petition to caveat after uncontested administrative probate, the orphans' court must determine the issues contained in the petition before granting letters testamentary. This is still the case under the mandates of ET § 5-207(b): the orphans' court must reopen and hold a new judicial probate proceeding when a party files a petition to caveat after administrative probate or judicial probate. Therefore, the new procedure for judicial

24

probate still follows the mandates of Md. Code, Art. 93 §§ 379 and 381, which do not require a total stay of proceedings.

The Court of Special Appeals also supported its conclusion by noting that this Court has previously held that a "stay" is required upon the filing of a petition to caveat. *See, e.g.*, *Keene v. Corse*, 80 Md. 20, 22–23 (1894) ("The filing of a *caveat* at any stage before an order has been signed admitting the will to probate arrests all further proceedings until the *caveat* has been disposed of."); *Gilbert v. Gaybrick*, 195 Md. 297, 305 (1950) ("The filing of the notice of caveat operated as a stay of proceedings in the Orphans' Court."); *Gessler*, 205 Md. at 504 ("We have definitely held that when a *caveat* is filed to a will before it is admitted to probate, the Orphans' Court cannot validly probate the will until the *caveat* is disposed of."); *Kent*, 225 Md. at 594 ("If filed before probate, the *caveat* operates as a stay until the issues are determined . . . ."). However, these cases were all decided before the Governor appointed a Commission to review the testamentary laws of Maryland, before the Commission proposed new procedures, and before the General Assembly enacted legislation to implement the Commission's proposals. [11] *See*

---

[11] Mr. Straka contends that *Merling v. Merling* is a case issued after the General Assembly enacted legislation adopting the Commission's proposals, which indicates that a stay is still the proper procedure after a party files a petition to caveat. 336 Md. 365, 375 (1994). *Merling* required this Court to determine whether an exception to the rule against hearsay applied in a caveat case. *Id.* at 366–77. As an aside to the central issue of whether a person was a party to the caveat case for purposes of the hearsay exception, this Court stated "the caveat acts as a stay pending determination of the issues[.]" *Id.* at 375. However, the procedure after a petition to caveat was not at issue in *Merling*; therefore, this statement constitutes *obiter dictum* and will not be given precedential effect. *See State v. Baby*, 404 Md. 220, 246 (2008).

1969 Md. Laws, ch. 3. Furthermore, the Commission indicated in its Comment that it was proposing a new procedure of judicial probate "[i]n place of all of the provisions of the prior law relating to a notice to caveat and the caveat procedures[.]" As such, the Commission acknowledged that it would be changing the former procedures by proposing a "single, simple procedure." By enacting legislation that adopted the Commission's proposal for mandatory judicial probate upon the filing of a petition to caveat, the General Assembly clearly intended to change the former procedure that "arrest[ed] all further proceedings until the *caveat* ha[d] been disposed of." *Keene*, 80 Md. at 22–23. In its place, the General Assembly enacted legislation to require a judicial probate hearing on the petition to caveat issues before the will is admitted to probate. Any jurisprudence interpreting the law before the General Assembly explicitly adopted a new procedure is, therefore, irrelevant to this Court's analysis of the legislative intent behind enacting ET § 5-207.

Overall, the plain language of ET § 5-207(b) indicates that a timely petition to caveat requires an orphans' court to hold a judicial probate hearing. The legislative intent to create this new procedure is confirmed by the legislative history. Specifically, the Commission's Comment to the proposed § 5-207 indicated that this "single, simple procedure" would be "[i]n place of all of the provisions of the prior law relating to a notice to caveat and the caveat procedures[.]" As such, this Court's jurisprudence regarding the process before the legislature adopted a new procedure for a petition to caveat is not relevant to this Court's analysis of the legislative intent in enacting ET § 5-207(b). Given this legislative history, this Court concludes that the General Assembly intended to implement a new procedure of

26

mandatory judicial probate when a party files a timely petition to caveat. Therefore, the orphans' court is not required to stay the probate proceedings upon the filing of a petition to caveat. Instead, the orphans' court must follow the plain instructions of ET § 5-207: (1) when a party files a petition to caveat in response to a petition for administrative probate, the court should allow the original petitioner to file a response to the caveat and then schedule a judicial probate hearing for a later date; or (2) when a party files a petition to caveat after the court has already held a judicial probate proceeding, the orphans' court must hold a new judicial probate hearing before admitting the will to probate. *See* ET § 5-207(b). Accordingly, we disagree with the Court of Special Appeals that a stay of all proceedings is required upon the filing of a petition to caveat; rather, a petition to caveat requires an orphans' court to hold a judicial probate hearing before admitting the will to probate.

**B.      *Proper Procedure in Orphans' Court after a Party Requests the Orphans' Court to Transmit Issues to Circuit Court***

Mr. Straka also asserts that, as a caveator, he was entitled to have the issues transmitted to a court of law pursuant to ET § 2-105. In that vein, Mr. Straka points this Court to case law indicating that transmission of issues to a court of law is mandatory in caveat cases. As such, Mr. Straka contends that the Orphans' Court for Worcester County also deprived him of his right to pursue another mechanism of contesting the validity of a will by denying his request to transmit the issues in his petition to caveat to a court of law. In response, Ms. Shealer maintains that the required judicial probate procedure does not

27

affect or hinder the caveator's right to transmit issues, but that Mr. Straka was not entitled to that right in this case.

In its Comment to § 5-207, the Commission recognized that in caveat cases a petitioner may wish to transmit the issues raised in the petition to caveat to a court of law: "The procedure for the hearing of a caveat case, including the transmission of issues to a court of law, is set forth in Sections 2-105 and 5-404. No change in the present law respecting such procedure is intended." Furthermore, this Court has emphasized that in a petition to caveat case, the orphans' court's duty to transmit issues to a court of law for trial by bench or jury is vital. *Maynadier v. Armstrong*, 98 Md. 175, 179–81 (1903); *see also Russell v. Gaither*, 181 Md. App. 25, 34–35 (2008) ("The Court of Appeals, however, addressed this possibility in *Maynadier v. Armstrong*, *supra*, where it said the orphans' court was authorized to decline to transmit issues in certain cases, but not in caveat proceedings, where the need for a right to transmit could be the greatest."). Although the Court of Special Appeals did not specifically address this issue below, this Court will determine the proper procedure in the orphans' court when a caveator also requests that certain issues be transmitted to a court of law pursuant to ET § 2-105.

Just as we analyzed ET § 5-207, this Court will first look to the plain language of ET § 2-105(b) in deciphering legislative intent and then consider legislative history as well as other external resources to confirm that statutory interpretation. *See Brown*, 454 Md. at 551; *Reger*, 455 Md. at 96 (quoting *Phillips*, 451 Md. at 196). The plain language of the statute regarding transmittal of issues to a court of law provides in relevant part:

28

> At the request of an interested person made within the time determined by the [orphans'] court, the issue of fact may be determined by a court of law. When the request is made before the [orphans'] court has determined the issue of fact, the court shall transmit the issue to a court of law.

ET § 2-105(b).[12] The plain language appears to set forth a fairly straight-forward process after a party makes a request to transmit factual issues to a court of law. When a party makes a request to transmit certain issues of fact before the orphans' court has determined those issues, then the orphans' court is required to transfer those issues to the circuit court. Although this language appears to be unambiguous, this Court will once again look to the legislative history to confirm this statutory interpretation.

The Commission's Second Report also proposed language for Md. Code (1969) Art. 93 § 2-105. Although the proposed language is slightly different than the current version of ET § 2-105, the proposal included language nearly identical to ET § 2-105(b):

> In any controversy in the [c]ourt, issues of fact may be determined by the [c]ourt or, at the request of any interested person made within such time as may be determined by the [c]ourt, by a court of law. Where such request is made before the [c]ourt has determined the issue of fact, the [c]ourt shall transmit the issues to a court of law.

The Commission also included a Comment analyzing the proposed § 2-105. Specifically, the Commission indicated that § 2-105 "is intended to continue the present practice now set forth in [Md. Code, Art. 93] §§272, 278, 280, and 281 (Md). See *Sykes*, §§221-229.

---

[12] ET § 2-101 states, "In the estates of decedents law, the word 'court' means the orphans' court in a county, or the court exercising the jurisdiction of the orphans' court in a county." We will use brackets in the quoted portion of ET § 2-105 in order to make clear that the court in question is the orphans' court.

No substantive changes are intended." Because the Commission explained that it intended

no substantive changes to the laws regarding transmittal of issues to a court of law, this

Court will first consider the language of the pertinent sections of Art. 93 as it appeared in

1957 as well as the cited sections of Philip L. Sykes, *Maryland Practice: Probate Law and*

*Practice* (Washington Law Book Co., 1956) ("Sykes").[13]

Md. Code (1957), Art. 93 §§ 278 and 280 are the two main predecessor statutes of

the proposed ET § 2-105. Section 278 provided in relevant part that "[t]he orphans' court

may, in all cases of controversy thereon, upon the application of either party, direct plenary

proceedings . . . ." In addition, Art. 93 § 280 stated:

> On such plenary proceeding, all the depositions shall be taken in writing and recorded, and, *if either party require it, the court shall direct an issue or issues to be made up and sent to any court of law convenient for trying the same*, and the issues shall be tried in the said court of law as soon as convenient, without any continuance longer than may be necessary to procure the attendance of witnesses . . . [.]

(Emphasis added). The language of these statutes confirms our interpretation that an

orphans' court is required to frame and send issues to the circuit court upon a party's

request before an ultimate determination in the orphans' court. The former statutes further

confirm that the General Assembly did not intend to make any changes to the procedures

governing transmittal of issues to a court of law by enacting ET § 2-105.

---

[13] On the first page of the Second Report to the Governor, the Commission indicated that all references to "*Sykes*" would refer to the specified sections of Philip L. Sykes, *Maryland Practice: Probate Law and Practice* (Washington Law Book Co., 1956). This Court will continue to refer to the source as "Sykes" to avoid confusion.

In addition to informing the Governor and the legislature that the proposal did not intend to change the law of the former statutes regarding transmission of issues to a court of law, the Comment to § 2-105 also included a citation to Sykes. The first section of Sykes cited in the Comment, § 221, reads in pertinent part:

> Issues of fact in controversies in the [o]rphans' [c]ourt within its jurisdiction may be determined by the [c]ourt itself, or, at the request of either party, by a jury in a court of law.. In order to submit factual questions to a jury, "issues" must first be formulated. An issue may be defined as a single, definite, and material question framed from the allegations of a petition and the answer thereto. Issues, therefore, presuppose plenary proceedings, and the pleadings must contain allegations which disclose the affirmation and denial of material and relevant facts. . . . *In proper cases, provided the request is made in time, the duty of the [o]rphans' [c]ourt to make up and transmit issues to a court of law is imperative. Except in caveat cases, after the parties have elected to try, and are actually trying the identical facts embraced in the proposed issues, the [c]ourt is not required to stop the hearing and send them. Nor can the [c]ourt be asked to transmit issues after it has passed an order on the merits of the controversy*.

(Emphasis added). This thorough discussion of transferring issues of fact to a court of law expounds on the same principles enunciated by ET § 2-105: An orphans' court that has tried and determined issues does not have a duty to send the issues to a circuit court; however, it is imperative for the orphans' court to consider a petition to caveat and response, frame issues of fact, and transmit those issues to a court of law when the party to a plenary proceeding requests a transfer of issues before the issues are adjudicated in the orphans' court. *See also Flaks v. Flaks*, 173 Md. 358, 365 (1938) ("The duty of the orphans' court to make up and transmit issues to a court of law, when required, is imperative, and it is also bound to accept the conclusions of the jury as final, and to make

31

them effective by proper orders or decrees."). Therefore, it is clear that in enacting ET § 2-105(b), the General Assembly intended to continue the longstanding procedure for transmitting issues from orphans' court to circuit court.

## C.  *Summary of Holdings and Application to the Case* Sub Judice

Ultimately, we conclude that the General Assembly intended to change the procedure to a judicial probate hearing before the orphans' courts after a petition to caveat pursuant to ET § 5-207; however, the legislature did not intend to change the procedure for transmitting issues to a court of law under ET § 2-105.

Pursuant to the simplified process for admitting a will to probate recommended by the Commission and enacted by the General Assembly, there are several possible timelines in which a party can contest the validity of the will. For example, an interested party could first file a petition for administrative or judicial probate to admit a will to probate. Another interested party may thereafter file a petition to caveat to contest the validity of that will. The original petitioner, along with the other interested parties, would then be provided twenty days to file a response to the petition to caveat. *See* Md. Rule 6-122(b)(2). Pursuant to this Court's statutory interpretation of ET § 5-207(b), the orphans' court would consider the petition to caveat and any response, then schedule a judicial probate hearing before admitting the will to probate. In the meantime, the Court can appoint a special administrator as this new procedure does not require the orphans' court to stay the proceedings. If the caveator subsequently requests certain issues be transmitted to a court of law, the orphans' court is bound to consider the petition to caveat and response, frame

32

the issues of fact, and send the issues to the circuit court if it has not already determined those issues as directed by ET § 2-105.

Alternatively, an interested party may proceed with an uncontested administrative or judicial probate. Within six months of the orphans' court appointing a personal representative in that proceeding, another interested party can file a petition to caveat, which reopens the case for a new determination by the orphans' court.[14] The reopening of the case requires the orphans' court to schedule a judicial probate hearing to make a final determination of the issues raised in the petition to caveat. Before the judicial probate hearing takes place, the caveator may request that the orphans' court transmit the issues to a court of law for a trial.

As both parties recognize, there were procedural abnormalities in the case *sub judice*. Here, the instant controversy arose when two interested parties each filed a petition for administrative probate. First, Mr. Straka filed a petition for administrative probate, indicating that no will had been found. Thereafter, Ms. Shealer filed a petition for administrative probate, asking that the Decedent's Will be admitted to probate. Ms. Shealer's petition specifically requested that the orphans' court hold a judicial probate hearing and that the orphans' court make specific findings, including that the Will was duly

---

[14] "Regardless of whether a petition for probate has been filed, a verified petition to caveat a will *may be filed at any time prior to the expiration of six months following the first appointment of a personal representative* under a will, even if there be a subsequent judicial probate or appointment of a personal representative." ET § 5-207 (emphasis added); *see also* Md. Rule 6-431.

executed. In response to Ms. Shealer's petition, the orphans' court scheduled a judicial probate hearing for April 19, 2016. As such, when Mr. Straka filed a petition to caveat, albeit an incomplete petition to caveat, on April 15, 2016, a judicial probate hearing was already scheduled. Typically, a party requests issues to be transmitted to a court of law after a petition to caveat and an answer is filed with the orphans' court; however, Mr. Straka made an oral request to transfer issues to the circuit court during the judicial probate hearing before the orphans' court issued its ruling.

The plain language and legislative history of ET § 5-207(b) indicate that the orphans' court is no longer required to stay the proceedings upon the filing of a petition to caveat. However, in this case, the judicial probate hearing was already scheduled when Mr. Straka filed a petition to caveat. As such, the previously scheduled judicial probate hearing did not permit Mr. Straka time to file an amended petition to caveat and Ms. Shealer time to file a response to the petition. As the legislative history of ET § 2-105 indicates, an orphans' court derives issues of fact to be transmitted to the circuit court by looking to a petition to caveat and response. *See* Sykes § 221 ("An issue may be defined as a single, definite, and material question *framed from the allegations of a petition and the answer thereto*.") (Emphasis added); *see also Fid. Tr. Co. v. Barrett*, 186 Md. 483, 488 (1946) ("It is true that the orphans' court may frame issues upon proper pleadings as to the invalidity of any portion of a will . . . .").

Mr. Straka made his oral request to transmit issues to a court of law during the judicial probate hearing. At the time of the oral request, the Orphans' Court for Worcester County had the opportunity to consider Ms. Shealer's petition for judicial probate,

34

requesting the orphans' court to determine that the Decedent's Will was duly executed, that she was legally competent to make the Decedent's Will, and that the Decedent's Will was properly attested to and executed. The Orphans' Court for Worcester County also had before it Mr. Straka's incomplete petition to caveat, which stated that Mr. Straka believed the Decedent's Will to be invalid because the Will was not properly executed and attested to in accordance with Maryland law, the Decedent lacked testamentary capacity to make the Will, and the Decedent's Will was procured by undue influence or fraud.

There were many ways in which the Orphans' Court for Worcester County could have responded to the procedural abnormalities and still complied with the required procedures under ET §§ 5-207 and 2-105. This Court concludes that the Orphans' Court for Worcester County had enough information from Ms. Shealer's petition for administrative probate and Mr. Straka's incomplete petition to caveat in order to determine that the judicial probate hearing constituted a plenary proceeding and to frame issues of fact on which the parties disagreed. Based on the procedural abnormalities of this case, this Court concludes that the Orphans' Court for Worcester County erred when it refused Mr. Straka's oral request to frame and transmit issues to the circuit court. Mr. Straka's petition to caveat and request to transmit issues did not proceed in a typical fashion; however, the request to transmit the issues to circuit court was made before the Orphans' Court for Worcester County made any final determination as to those issues. Therefore, the Orphans' Court for Worcester County failed to comply with the longstanding and unchanged procedure set forth under ET § 2-105(b) for transmission of issues to a court of law.

35

## D.    *Harmless Error*

The final issue in this appeal is whether the orphans' court's error was harmless. The Court of Special Appeals determined that Mr. Straka satisfied his burden of showing prejudice because an orphans' court's determinations following a judicial probate proceeding are final and binding on all persons. *See* ET § 5-406 ("[A]ny determination made by the court in a proceeding for judicial probate is final and binding on all persons."). Ms. Shealer asserts that any error by the Orphans' Court for Worcester County was harmless. Furthermore, Ms. Shealer contends that the Court of Special Appeals improperly determined that Mr. Straka showed prejudice under the harmless error standard. Mr. Straka maintains that he was prejudiced[15] when the Orphans' Court for Worcester County failed to stay the proceedings upon his petition to caveat. In addition, Mr. Straka argues that he was mainly prejudiced because he was prevented from transmitting the issues outlined in his petition to caveat to the circuit court for trial by jury.

We have repeatedly held that "this Court will not reverse a lower court judgment if the error is harmless." *Flores v. Bell*, 398 Md. 27, 33 (2007); *see also Greenbriar v. Brooks*, 387 Md. 683, 740 (2005); *Crane v. Dunn*, 382 Md. 83, 91 (2004). The party

---

[15] Mr. Straka also contends that he is entitled to a presumption of prejudice because the orphans' court's alleged failure in the proceedings below constituted an egregious civil error. However, this Court has previously noted that parties are only entitled to a presumption of prejudice in "limited circumstances," none of which apply here. *See Barksdale v. Wilkowsky*, 419 Md. 649, 660 (2011) ("Other than these limited circumstances, the burden to show error in civil cases is on the appealing party to show that an error caused prejudice.").

complaining that an error has occurred has the burden of showing prejudicial error. *Flores*, 398 Md. at 33. "Prejudice will be found if a showing is made that the error was likely to have affected the verdict below. 'It is not the possibility, but the probability, of prejudice which is the object of the appellate inquiry.'" *Crane*, 382 Md. at 91 (quoting *State Deposit Ins. Fund Corp. v. Billman,* 321 Md. 3, 17 (1990)). Ultimately, this Court determines prejudice "based on the facts of each individual case." *Barksdale*, 419 Md. at 662.

As discussed above, this Court determined that the Orphans' Court for Worcester County did not err when it held a judicial probate hearing, the new procedure enacted by the General Assembly, instead of staying the proceedings after Mr. Straka filed his incomplete petition to caveat. *See* ET § 5-207(b). However, we also concluded that the orphans' court erred when it denied Mr. Straka's request to transmit issues of fact to the circuit court when the orphans' court had not yet determined those issues. *See* ET § 2-105(b). Therefore, the question becomes whether the orphans' court's error in refusing to frame and transmit factual issues was harmless.

This Court has long described the orphans' court's responsibility to frame and direct issues of fact to a court of law for a jury trial as an "imperative duty." *Schmidt v. Johnston*, 154 Md. 125, 126 (1928); *see also Flaks*, 173 Md. at 365 ("The duty of the orphans' court to make up and transmit issues to a court of law, when required, is imperative, and it is also bound to accept the conclusions of the jury as final, and to make them effective by proper orders or decrees."); *Price v. Taylor*, 21 Md. 356, 363 (1864) ("The duty of the [o]rphans' [c]ourt to make up and transmit issues to a [c]ourt of law, when required, is imperative[.]"). This line of jurisprudence explained:

37

> The law confides in the [o]rphans' [c]ourt power to determine whether or not a will should be admitted to probate. To aid in the execution of that duty, the Legislature has empowered the court to direct any issue of fact to be tried by plenary proceedings and with the help of a jury. *Upon the request of either party, the [o]rphans' [c]ourt is required to frame issues and send them to a court of law for trial.*

*Ades*, 204 Md. at 272 (emphasis added). As such, Maryland courts have emphasized that the orphans' court's duty to transmit issues of fact to the circuit court is a significant obligation.

In addition to the general principles regarding transmitting issues to a court of law, this Court has also stressed that having a jury decide certain issues of fact becomes most significant in caveat cases. As early as 1821, this Court recognized:

> The regular mode of proceeding in opposition to the admission of a will to probat[e], is by caveat; and it may often happen, (and probably most frequently does,) that the necessity for a plenary proceeding and a trial by jury, is only discovered after a part at least of the testimony is taken; and at any stage of the proceedings, before final adjudication, either party may require it, and the court is not at liberty to refuse it.

*Barroll v. Reading*, 5 H. & J. 175, 176 (1821). Therefore, Maryland has consistently emphasized the importance of sending issues to a court of law in caveat cases even in instances when the orphans' court has heard part of the testimony on the petition to caveat. *See also Maynadier v. Armstrong*, 98 Md. 175, 180 (1903) ("[W]e are of the opinion that the statute does not require the orphans' court to stop the investigations being made before it, as these were, and send to a court of law issues for the determination of such questions as those proposed in this petition, when that investigation is being made under a plenary proceeding . . . . *There may be cases under caveats to wills, and possibly some other*

38

*plenary proceedings, in which it may be proper*; but, when that court is actually engaged in the hearing of the question whether administrators are entitled to be allowed for such items as these, it might lead to dangerous practices if either party has the right to stop all proceedings in that court, and require issues to be sent to a court of law."); *Russell v. Gaither*, 181 Md. App. 25, 34–35 (2008) ("The Court of Appeals, however, addressed this possibility in *Maynadier v. Armstrong*, *supra*, where it said the orphans' court was authorized to decline to transmit issues in certain cases, but not in caveat proceedings, where the need for a right to transmit could be the greatest.").

In this case, Mr. Straka contends that he was primarily prejudiced because he was unable to transmit the issues asserted in his petition to caveat to a court of law to be tried by a jury. After reviewing the record, this Court notes that Mr. Straka did not present any witnesses at the judicial probate hearing, did not present any substantive evidence, and did not have a chance to fully argue all of the issues alleged in the petition to caveat. Given the importance of transmitting issues to a court of law, especially in caveat cases, this Court is persuaded that the Orphans' Court for Worcester County's refusal to transmit issues was not harmless. *See Barroll*, 5 H. & J. at 176; *Russell*, 181 Md. App. at 34–35. In denying Mr. Straka the opportunity to present witnesses, evidence, and arguments to a jury, we conclude that the orphans' court's refusal probably would have affected whether that court ultimately admitted the Decedent's Will to probate. *See Crane*, 382 Md. at 91.

Moreover, the procedural abnormalities in this individual case also convince this Court that the error was not harmless. *See Barksdale*, 419 Md. at 662. Specifically, the timing of the petition to caveat disrupted one of two normal procedures intended by the

39

General Assembly: (1) the filing of a petition to caveat after a petition for administrative probate, which would require a future judicial probate hearing; or (2) the filing of a petition to caveat after a judicial probate proceeding, which would require the orphans' court to hold a new judicial probate hearing before admitting the will to probate. *See* ET § 5-207(b). Here, Mr. Straka filed a petition to caveat when there was already a judicial probate hearing scheduled. As such, the orphans' court properly proceeded with judicial probate in light of the petition to caveat. However, the timing of that judicial probate hearing did not allow Mr. Straka the opportunity to file an amended petition to caveat or Ms. Shealer time to respond to the petition to caveat before the orphans' court admitted the Will to probate. Therefore, this Court is persuaded that the specific facts of this case require a finding that the error was not harmless. Accordingly, we agree with the Court of Special Appeals that error in this case was not harmless.

## CONCLUSION

This Court concludes that the General Assembly intended to create a new, simple procedure before an orphans' court upon the filing of a petition to caveat: a judicial probate proceeding. *See* ET § 5-207(b). The plain language and the legislative history of this statute persuades this Court that the legislature did not intend for the orphans' court to have to stay all proceedings when an interested party files a petition to caveat a will. This Court further concludes that the General Assembly did not intend to change the longstanding procedure required when an interested party requests to transmit issues to a court of law in caveat cases. Pursuant to ET § 2-105(b), an orphans' court is required to transmit issues of fact to the circuit court if it has not already determined those issues.

40

As such, the Orphans' Court for Worcester County did not err by proceeding with a judicial probate hearing, and refusing to stay the matter, after a party filed a petition to caveat. Although there were procedural abnormalities, ultimately this Court concludes that the Orphans' Court for Worcester County committed error when it refused to transmit issues of fact because Mr. Straka requested the transfer before the orphans' court had finally decided those issues. This Court is further persuaded that this error was not harmless because it denied Mr. Straka, a caveator, the significant right to have certain issues of fact tried by a jury.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED IN PART AND REVERSED IN PART. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE ORDER DATED APRIL 19, 2016 ADMITTING WILL TO PROBATE AND APPOINTING MS. SHEALER PERSONAL REPRESENTATIVE AND REMAND TO THE ORPHANS' COURT FOR WORCESTER COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE-HALF BY PETITIONER AND ONE-HALF BY RESPONDENT.**